(109 So. 161)

## BEAIRD v. STATE. (7 Div. 631.)

(Supreme Court of Alabama. June 17, 1926.)

**I. Jury ⟨⟩89.**

Citizen of city is not disqualified as a juror by reason of interest, when city is party to cause, under Code 1923, § 8664.

**2. Jury ⟨⟩89.**

City's employment of counsel to assist in prosecuting accused for killing policeman *held* not to disqualify taxpayer of city as juror.

**3. Jury ⟨⟩82(2).**

Mistake in name on venire list does not disqualify, where person intended is called and answers (Code 1923, § 8648).

**4. Homicide ⟨⟩171(1).**

Evidence that deceased wore uniform and badge of policeman *held* admissible to show deceased was officer and had accused under arrest.

**5. Homicide ⟨⟩180.**

Evidence that defendant at time of killing had been drinking whisky *held* admissible.

**6. Criminal law ⟨⟩452(1).**

As to defendant's intoxication, it was proper for witnesses who saw, knew, and heard accused talk about time of homicide to state whether he talked "rationally" and "with good sense."

**7. Homicide ⟨⟩169(1).**

Evidence that accused's companions had to persuade him to leave home, and details of his and their acts and words when buying and drinking whisky prior to killing, *held* properly excluded.

**8. Criminal law ⟨⟩377.**

In criminal prosecutions, accused's previous good character is competent and relevant, must be submitted to jury, and ought to be considered in determining guilt or innocence.

**9. Homicide ⟨⟩339.**

In murder prosecution, that witness was not permitted to testify as to general character of accused "for peace and quiet" in community in which he resided *held* reversible error.

**10. Criminal law ⟨⟩519(3).**

Evidence that after accused had been taken to jail he voluntarily declared that his companion did the shooting *held* properly admitted.

**II. Criminal law ⟨⟩520(1)—Adjurations to accused after arrest to tell truth do not render confession inadmissible.**

Statements to accused in murder prosecution after arrest "to come clean with it; best thing you can do is to tell it," *held* mere adjurations to tell truth, and not to render confession inadmissible.

**12. Criminal law ⟨⟩531(3).**

Evidence *held* to show that confession of accused was not induced by threat or promise operating to produce apprehension of harm or hope of favor; hence it was admissible.

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**13. Criminal law ⟨⟩⟩531(1).**

Confession of guilt is prima facie involuntary, and burden is upon prosecution to show it was made "free from the influence of fear or hope, applied by third person."

**14. Criminal law ⟨⟩⟩519(4).**

That confession is made to officer having legal custody of accused does not render it inadmissible.

**15. Criminal law ⟨⟩⟩829(1).**

Refusal of correct charges, fairly and substantially covered by general oral charge and other written charges, is not reversible error, in view of Code 1923, § 9509.

Appeal from Circuit Court, Etowah County; W. J. Martin, Judge.

Homer Beaird was convicted of first degree murder, and he appeals. Reversed and remanded.

Street, Bradford & Street, of Guntersville, for appellant.

Defendant's objection to taxpayers of Attalla being put on the list of jurors should have been sustained. Blackwell v. State, 76 Fla. 124, 79 So. 731, 1 A. L. R. 502; Pizitz v. Cusimano, 206 Ala. 689, 91 So. 783; Code 1923, § 6610; 35 C. J. 315, 373. Compliance with the requirement that a correct list of jurors be served upon defendant is mandatory. Code 1923, § 8644; Howard v. State, 160 Ala. 6, 49 So. 755. The law presumes all confessions to be involuntary. Hoober v. State, 81 Ala. 51, 1 So. 574; Crenshaw v. State, 205 Ala. 256, 87 So. 328; Stone v. State, 208 Ala. 50, 93 So. 706. Defendant should have been permitted to show what was said and done by defendant when setting out on the journey. Ex parte Warsham, 203 Ala. 534, 84 So. 889; 30 C. J. 195, 223. Defendant's character for peace and quiet was admissible. 30 C. J. 169; Mitchell v. State, 14 Ala. App. 46, 70 So. 991.

Harwell G. Davis, Atty. Gen., and Thos. E. Knight, Jr., Asst. Atty. Gen., for the State.

The two veniremen were not rendered incompetent because taxpayers of the city. Code 1923, § 8664; Doyal v. State, 70 Ga. 134; 24 Cyc. 272. That a juror of slightly different name answers to name on venire is not error. May v. State, 21 Ala. App. 186, 106 So. 608; Id., 214 Ala. 117, 106 So. 609. That defendant was exhorted to tell the truth does not render his confession involuntary. Curry v. State, 203 Ala. 239, 82 So. 489; Fincher v. State, 211 Ala. 388, 100 So. 657. Details of defendant's conduct the night before the killing were inadmissible. Hendley v. State, 200 Ala. 546, 76 So. 904; Whitehead v. State, 206 Ala. 288, 90 So. 351; Morell v. State, 18 Ala. App. 243, 91 So. 501. That deceased had on a uniform was relevant evidence. B. R. & E. Co. v. Franscomb, 124 Ala.

621, 27 So. 508. Defendant's character for peace and quiet should not be put in issue, unless there is a question as to who was the aggressor. Autrey v. State, 190 Ala. 10, 67 So. 237; Steele v. State, 83 Ala. 20, 3 So. 547.

MILLER, J. The defendant was indicted, tried, and convicted for the offense of murder in the first degree, killing Henry Ingram, by shooting him with a pistol. His punishment was fixed at life imprisonment in the penitentiary by the jury.

[1, 2] It appears from the evidence that Henry Ingram, the deceased, was a policeman in city of Attalla at the time he was killed, and had defendant under arrest. This municipality employed counsel to assist in the prosecution of the case. Two of the jurors who qualified and who were on the venire were taxpayers of this city, and one resided within and the other without the corporate limits. The defendant challenged these two jurors, and objected to each being placed on the list of qualified jurors, because both were taxpayers of the city, and one resided in the city and the city had employed an attorney to prosecute this case. The court overruled the objection, placed the names of each on the qualified list of jurors, and the defendant used his challenges to strike them. In this the court did not err. These two veniremen were taxpayers of the city, and this did not render them incompetent to serve as jurors. A citizen of a city is not disqualified by reason of interest as a juror when the city is a party to the cause. Section 8664, Code of 1923. Here the city was not a party, simply employed counsel to assist in prosecuting the defendant for killing a policeman of the city, and because the juror owns property in the city or resides therein, and the taxes on part thereof paid by him may be used in paying the attorney to prosecute the defendant, would be too remote and contingent to affect his competency as a juror. Section 8664, Code of 1923; Doyal v. State, 70 Ga. 134, headnote 1.

[3] Thomas B. Malone was called as a juror from the list of venire. He answered, and proof showed he lived at 519 Walnut street, and he was a member of the merchant firm of Malone & Davis. The venire served on the defendant contained this name, "Thoms D. Malone, merchant, 519 Walnut street, Malone & Davis." It is certain that Thomas B. Malone was the person intended as a juror, and he appeared and qualified. His name, over objection and exception of the defendant, was placed by the court on the qualified list of jurors, and the defendant used one of his strikes to challenge him. Under the statute a mistake in name of any juror drawn and summoned shall not be sufficient to quash the venire or continue the

cause, and the statute now does not as formerly require the name of such person to be discarded and another summoned to supply the place. Section 8648, Code of 1923, and section 7267, Code of 1907. So we must hold the court did not err in placing him on the qualified list, as it was evident he was the person intended by the jury commissioners as a juror. It was simply a mistake in his name. Milligan v. State, 208 Ala. 223, 94 So. 169; section 8648, Code of 1923.

John Beaird and Ras Latham had been driving around in an automobile, buying and drinking liquor on Saturday night, December 2, 1925. About midnight they called at the house where the defendant resided, woke him, and he joined them and drove the car. They purchased more whisky, and all drank some and continued in their automobile, traveling the balance of the night. Sunday morning they reached Attalla, where they all got out of the car. Ras Latham and defendant went to one restaurant and got a cup of coffee. There was evidence that each was drunk. Ras Latham was more intoxicated than defendant. They walked together from the restaurant back to the car, and both got in it. The deceased, a policeman, came up and told Ras Latham to get out of the car and get in his car, which he did. The defendant drove his car off, and the policeman's car followed; then the policeman ran his car in front of defendant's car and ordered it stopped, and directed defendant to get out and get in his car. The defendant was on the rear seat of the car with Ras Latham, and the deceased was driving the car. The defendant had a pistol in his pocket. He asked Ras where they were being taken, and he replied, to jail. Defendant pulled his pistol from his pocket and he shot it, intentionally or accidentally, the ball hitting deceased in the rear of or below the ear; he fell over, and soon bled to death. The car ran into something and stopped. The defendant and Latham jumped out and ran off. They were arrested that day some distance from Attalla. There was evidence tending to show that defendant fired the pistol, and there was evidence that it went off accidentally as he was getting it out of his pocket and throwing it out of the car to prevent it being found on his person. There was evidence that he was drinking, and some evidence tending to show he was drunk at the time, and there was some whisky in the car. The foregoing is the tendency of some of the testimony in the case.

[4] The evidence that deceased had on the uniform and badge of a policeman at the time he was killed was relevant. It tended to show he was a city official and had defendant under arrest. Husch v. State, 211 Ala. 274, headnote 2, 100 So. 321.

[5, 6] It was competent to prove that defendant and others in the car that night were buying and drinking whisky. It shed light on the mental condition of the defendant from the effects of the whisky at the time the deceased was killed. And it was proper for witnesses who saw, knew, and heard him talk about the time of the homicide to state whether he talked "rationally" and "with good sense," as it would tend to show his condition as to intoxication. White v. State, 103 Ala. 72, headnote 3, 16 So. 63; Fincher v. State, 211 Ala. 388, headnote 4, 100 So. 657; Cagle v. State, 211 Ala. 346, 100 So. 318.

[7] But the testimony that his companions had to persuade him to leave home that night, and the details of his and their acts and words when buying and drinking the whisky, would have no tendency to justify, extenuate, or condemn the acts of the defendant at the time of the homicide, and the court properly excluded it from the jury. The deceased was not present and knew nothing thereof, and was not connected at that time with the defendant. Whitehead v. State, 206 Ala. 288, headnote 4, 90 So. 351.

[8] Six witnesses testified that they knew the general character of the defendant in the community in which he lived, and that it was good. And the defendant asked the first witness if he knew his general character for "peace and quiet." The state objected, and the court sustained the objection, and would not permit the defendant to prove by these witnesses that they knew his general reputation or character in the community for "peace and quiet," and that it was good. The good character of the defendant, with reference to the subject of the charge in the indictment, is a fact relevant and competent for the consideration of the jury in connection with the other testimony in the case. Armor v. State, 63 Ala. 173. This court on this subject in Kilgore v. State, 74 Ala. 1, headnote 3, wrote:

"In all criminal prosecutions, whether for felony, or for misdemeanor, the previous good character of the accused, having reference and analogy to the subject of the prosecution, is competent and relevant as original testimony; it is a fact which must be submitted to the jury, and ought to be considered by them in determining whether he is guilty of the offense with which he is charged."

[9] The general character of a defendant for peace and quiet in the community in which he resides has reference and analogy to the subject of murder and manslaughter, the offenses charged in this indictment, and the court should have permitted this testimony to go to the jury. It is competent and relevant as original testimony for the defendant. For this error, the judgment must be reversed. 4 Michie Dig. p. 156, § 227, and authorities there cited; Carson v. State, 50 Ala. 134; Felix v. State, 18 Ala. 720.

[10] There was evidence that after defendant was arrested by the chief of police, O'Bryant, that morning that the chief kicked him two or three times as he was getting in the

automobile to go to the jail. That day the defendant was in jail, and he told L. H. Camp "that Latham did the shooting." While this was not a confession, it was matter in that nature. It was competent evidence, and the court did not err in admitting it, because this witness, Camp, had previously shown by his testimony that it was voluntarily made by the defendant. The chief of police was not there. Crenshaw v. State, 205 Ala 256, headnote 4, 87 So. 328.

The defendant and Ras Latham, who was also under arrest, in the afternoon after their arrests, were carried to the Birmingham jail by Sheriff Leath, John Coleman, and L. H. Camp. While on the way to Birmingham the state proved the defendant made a confession. The defendant insists it was not shown to have been voluntarily made by him. L. H. Camp testified to the court:

"Before Mr. Beaird made any statement about the killing, neither I nor anybody in my presence .or his presence made any threats against him to get him to make the statement or told him it would be better for him to make a statement, or offered him any reward to get him to make a statement. The subject was raised between Beaird and Latham. Mr. Latham said to him: 'Homer, why did you want to tell the officers that I shot Henry Ingram?' My recollection is, he replied, 'I don't know; I don't know why that I did that; I don't know why I shot Mr. Ingram; I didn't have anything against him.' Beaird said another thing; he said he would have given $1,000 if it hadn't have happened."

The court permitted this testimony to go to the jury over the objection of the defendant. As to this conversation Ras Latham testified to the court:

"Before the defendant made any statement to me there about the killing of Henry Ingram, neither I nor any one in his presence offered him any reward to get him to make a statement, or made any threats against him to get him to make a statement, or tell him that it would be better for him to make a statement."

The witness testified:

"Mr. Coleman asked him [Homer Beaird] who done the killing, Beaird said, 'I done it.' Mr. Coleman asked him, 'How come you to do it, Homer?' Beaird said, 'I can't tell you Mr. Coleman, how come me to do it.' That was about all I heard. I asked Beaird what made him tell that I did it. He said that he never had told anybody that I did it. I don't think I said anything more about the killing in that conversation."

John Coleman testified to the court:

"Before that statement was made by him about the killing, between here and Birmingham, no threats were made against him by any one nor any inducements held out to him nor any reward offered him. I told him it would be better for him to tell it, I thought, something like that. I didn't offer him any inducement whatever. We were riding along in the car, and I asked him why he killed Henry Ingram, and he said he didn't kill him.

"Defendant's counsel here said to the court: 'Now we object, if the court pleases, to the witness' statement of what Beaird said.'

"The witness continued: 'Up to that time I had not made any threats against him nor offered him any reward. No one in my presence made any threats against him or offered him any reward or made any promises. He said at that time that he didn't kill him.'

Mr. Street, attorney for defendant, then said: 'Wait a minute; let me ask him a question, will you please.'

"On cross-examination the witness stated: 'My statement to him that it would be better for him to tell it was not before he said anything about the occurrence. Before I made that statement Beaird said he didn't kill him, and I said, 'You had just as well come clean with it, Homer, the best thing you can do is to tell the whole thing and tell it straight.' "

The court on motion ·of· the defendant excluded from the jury what the defendant said as testified to by this witness, and refused to let this witness tell the jury the balance of the statement made by the defendant.

Sheriff Leath testified:

"I heard the defendant make a statement about this killing, in the car between here and Birmingham. Before he made this statement no inducements were held out to him to get him to make a statement, nor was any reward offered him, nor did anybody tell him it would be better for him to make a statement about it, nor were any threats made against him. This was the same conversation about which the witness John Coleman testified. We were all in the car there together. Ras Latham and Mr. Camp were both present in the car."

He then testified as follows:

"I was on the front seat of the car and Mr. Coleman in the rear seat. Beaird was on the rear seat. Some one said, 'How came you to shoot Ingram?' And the defendant said, 'I didn't shoot him'; and then I said, 'You said Ras Latham shot him'; and then Ras said, 'What did you want to tell that I shot him for; you know you shot him.' Defendant said, 'I shot him accidentally; I don't know how came me to do it."

Then counsel for defendant withdrew their objection to this witness testifying to that conversation. The court refused the motion of defendant to exclude the testimony of Camp and Latham as to this statement by the defendant as testified to by them, because it was not shown to have been voluntarily made by the defendant.

The chief of police, who kicked the defendant, was not present with these witnesses in the car at the time the statements were made by the defendant. The defendant and the witnesses were in an automobile on their way from Gadsden to Birmingham. It will be observed the court held this statement of the defendant to be voluntarily made by him under the evidence of Camp and Latham, and allowed their version of it to go to the jury, and the court held this statement was not voluntarily made under testimony of John Coleman, and his version of the statement

was excluded from the jury; and the defendant withdrew his objection to Leath's testimony and version of the statement, and it went to the jury with consent of the defendant.

[11-14] The statements by Coleman to the defendant were substantially these: "To come clean with it; * * * the best thing you can do is to tell the whole thing and tell it straight; * * * it would be better for him to tell it." These were simply adjurations to him to speak the truth. They might call for a statement by defendant of innocence as well as guilt. Under all the testimony of the four witnesses, and the surrounding circumstances, we are convinced the statements of the defendant testified to by the witnesses were not "induced by a threat or promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor." And we hold the statements by the defendant were, under the testimony, admissible in evidence as voluntarily made by him under this rule, clearly stated in Redd v. State, 69 Ala. 259, which reads as follows:

"The settled rule of this court is, that all such confessions are prima facie involuntary, and they can be rendered admissible only by showing that they are voluntary and not constrained—or, in other words, free from the influence of fear or hope, applied to the prisoner's mind by a third person. Murphy v. State, 63 Ala. 1; Johnson v. State, 59 Ala. 37; Porter v. State, 55 Ala. 95; Clark's Man. Cr. Law, § 2480; Clark's Dig. [Cr.] § 326; 1 Brick. Dig. p. 509, § 859. It is no sufficient objection that they are elicited by mere adjurations to speak the truth, for this may be properly construed as advice to assert innocence, as well as to confess guilt. Aaron v. State, 37 Ala. 106; King's Case, 40 Ala. 314; Whart. Cr. Ev. §§ 647, 672. Nor are confessions rendered inadmissible by the mere fact of being made to sheriffs, constables, jailors, or other officers of the law having the legal custody of the prisoner. Aaron's Case, supra; Whart. Cr. Ev. §§ 647, 649. The true test is, whether, under all the surrounding circumstances, they have been induced by a threat or promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence."

We find no other reversible error in the rulings upon the evidence.

The parts of the oral charge of the court to which exceptions were reserved by the defendant were free from error when considered, as they should be, in connection with the entire oral charge.

[15] Some of the refused charges requested by the defendant are clearly abstract, and the other refused charges of defendant, in so far as they are correct statements of the law of the case, were fairly and substantially covered by the general oral charge of the court and the written charges given at the request of the defendant. The general oral charge stated fully the law on all phases of the testimony in the case. A detailed discussion of the refused charges will do no good and unduly lengthen this opinion. Section 9509, Code of 1923.

The other exceptions to the argument of the state's attorneys to the jury need not be discussed, as they will probably not occur on another trial.

For the error mentioned, the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.