8 So.2d 178

**MEALER v. STATE.**

**6 Div. 865.**

Supreme Court of Alabama.

May 14, 1942.

Thos. S. Lawson, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

Geo. M. Van Tassel, of Tuscaloosa, for appellant.

FOSTER, Justice.

This appellant was convicted of first degree murder of his wife, Laura Mealer, on an indictment in five counts of which the third and fourth were nol prossed, leaving counts 1, 2 and 5. One charged that the killing was by beating her with his fists; two, by kicking her with his feet; and five, by means unknown to the grand jury. The trial and proceedings were all conducted pursuant to the requirements of the statute, resulting in a verdict finding him guilty of murder in the first degree and fixing his punishment at death.

The defendant was represented by an attorney appointed by the court, who conducted the trial with apparent appreciation of his duty and of the rights of defendant and the rules and principles of law which

govern such a trial. The indictment was returned and filed February 12, 1941. Defendant was first arraigned on March 4, and plead not guilty and not guilty by reason of insanity, and his trial set for March 12th. On that day the trial was continued. On April 2d, he was again arraigned, and again plead not guilty and not guilty by reason of insanity, and the trial set for April 9th, and a special jury was ordered and drawn as required by law. All the proceedings are set out and are regular, though no question was raised as to any of them.

The case was tried on April 9th, in which defendant withdrew his plea of not guilty by reason of insanity. The trial resulted as we have stated, and defendant was duly adjudged guilty and sentenced to death in the electric chair as provided by law.

Certain contentions are made by his counsel, which we will discuss. We have carefully examined the record, and find nothing prejudicial apart from those matters thus argued by counsel.

The first contention made is based on objections to the evidence of State's witnesses on rebuttal, after defendant had testified, that the general character of defendant was bad. Defendant had not sought to show his good character. There was no effort to extend proof of character beyond that of general bad character, without specifying any special bad quality of it. Appellant insists that this was erroneous since defendant had not put in issue his character. There was no effort made to have this evidence limited in its effect for the impeachment of defendant as a witness, nor to have it made available for other purposes. Its effect as evidence was not in any manner referred to insofar as the record shows.

■■ We have many cases holding that such evidence is admissible to impeach a defendant on trial who has testified as a witness, just as it may be used to impeach any other witness in the case. The court cannot be held to a reversible error for not so instructing the jury in the absence of a request to that effect. For impeachment purposes, the evidence of bad character need not extend beyond that of general character, but may be extended to include character for truth and veracity, if either the State or defendant wishes to do so. Cooley v. State, 233 Ala. 407, 171 So. 725; Baugh v. State, 215 Ala. 619, 112 So. 157; Gast v. State, 232 Ala. 307(9), 167 So. 554. Many earlier cases are cited in them.

■ There was no ruling of the court which was prejudicial to appellant in this connection.

■ Under proposition No. 6 appellant's counsel argues that there was error in respect to a statement made by the State's witness A. C. Wright that defendant "seemed mad." This was at the house of defendant on Monday before his wife died Friday, there being evidence from which it could be inferred that she had been beaten up and was moaning at that time. Aside from the fact that no ruling was made or sought in respect to such evidence it was not illegal on any ground. Carney v. State, 79 Ala. 14; Thornton v. State, 113 Ala. 43, 21 So. 356, 59 Am.St.Rep. 97; Kubicek v. Slezak, 119 Neb. 542, 230 N.W. 248, 69 A.L.R. 1168; 20 Amer.Jur. 692, section 823.

■ Appellant's proposition No. 10 relates to an alleged dying declaration, a part of which was that "Paul (defendant) made me lie like a dog on my death bed when I said he did not beat me." In his presence and at his instance she had previously told this witness "He did not do it." The contention here made is that by such declaration she is expressing an opinion on the basis of what is said in White v. State, 24 Ala.App. 442, 136 So. 420. In that case the declaration was said to express an opinion of the declarant as to his chances to defend himself. We need not here express any view upon the question of whether in that case the declaration was subject to objection on that ground. The statement of the witness in the instant case did not violate the principle of opinion evidence. It was merely an expression of emphasis, "like a dog." Compare cases cited in 30 Corpus Juris 274–5.

Appellant's proposition No. 11. This relates to a motion for a new trial. The chief feature of this motion, other than the contentions to which we have referred, is the claim of insanity. As we have shown, defendant was first arraigned March 4th, with appointed counsel to defend him, when a plea of not guilty by reason of insanity was interposed along with one of not guilty. The same proceeding occurred on April 2d, when his trial was set for April 9th, and on that day his plea of insanity was withdrawn. In support of the motion, the attorney for defendant made affidavit that defendant's father. who resides in Mississippi, and is a man

seventy-five years of age, called on him prior to the trial date and they together called on defendant in the jail and discussed the facts of the case with him. That he gave them the same account of the affair as he testified, and that the idea of proving insanity did not occur to him as he thought the death of deceased was caused by a fall, as related by defendant, and did not get much information from his father.

There was also introduced the affidavits of defendant's father and numerous other relatives, all tending to show mental abnormalities of defendant extending over many years, but none of such information came to his attorney prior to the trial. How it was later brought to his attention is not shown.

Defendant was a foreman for W.P.A. There was an affidavit by an employee under him in that work to the effect that he was peculiar and highly nervous, the affidavit going into detail.

█ The affidavits were not contradicted. Most of the affiants were close relatives of defendant, and doubtless knew of the case pending against him, but seemed to take his statement as to the cause of the death of his wife as true without much doubt, as did his attorney. This was true of defendant's father, his son, his sisters, his uncle, his cousins and nieces. The only others being two W.P.A. workers, man and wife. None of this information was communicated to defendant's attorney. The trial was not hurriedly entered into, and it must have been known to all those affiants before it began. It is merely a situation where after trial, resulting unfavorably to defendant, it has occurred to the members of his family that the defense of insanity would have helped his cause. The idea of insanity somehow came before the trial into the mind of defendant's counsel, we know not how, and he pleaded it twice for defendant. This may have been done in abundance of caution. But when at the trial it was withdrawn, attention was specially and emphatically directed to it and its elimination as a defense. This was a positive act done several months after the occurrence and after the indictment. It is virtually saying that though the plea of insanity was interposed, I find nothing to support it, and therefore withdraw it. His attention should have then been called to the fact now insisted on by at least some of those relatives who gave their affidavits. The failure to do so was clearly a want of diligence. Ascertainment of these facts was not shown to have been the result of accident.

█ It is of course well known that lack of diligence is justification for refusing a new trial on the ground of newly discovered evidence, though defendant was in jail, when such evidence was discovered after the trial, not by chance but by someone's effort made afterwards, or was not mentioned to defendant's counsel through indifference or overconfidence in his defense of not guilty, and supposing that he would not need to interpose the defense of insanity. Scruggs v. State, 224 Ala. 328, 140 So. 405; Slaughter v. State, 237 Ala. 26, 185 So. 373; Fulwider v. Jacob, 221 Ala. 124, 127 So. 818.

The trial court, in denying the motion, undoubtedly had in mind the appearance and mental status of defendant as he gave his testimony in court and otherwise deported himself. This is a privilege which we do not have and cannot appraise the value of the affidavits with the same degree of satisfaction as could the trial judge. (But as we read his testimony, there is no indication of mental unsoundness.) We treat this question very seriously, especially in view of the death penalty, but must pass on it in the light of settled principles, and let the responsibility rest where the law has placed it.

If the theory of the State is the true version of the occurrence, this was a most cruel and dastardly act of murder, with no mitigation, provoked by a family incident of no material consequence.

There seemed to be nothing which occurred on the trial that suggested insanity at that time, which was about five months after the homicide.

█ There was no reversible error in refusing the requested charges. Those which assert correct principles were sufficiently covered in other charges or in the oral charge.

We have considered the entire record, and find no reversible error.

The time set for the execution of appellant having now passed, this Court fixes Friday, June 26th, 1942, as the date for it to be carried out. It is so ordered.

Affirmed.

All the Justices concur, except KNIGHT, J., not sitting.