Argued March 10; affirmed April 27; rehearing denied May 25, 1943

# STATE v. SPRAGUE
### (136 P.(2d) 685)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK and BRAND, Associate Justices.

*George Mowry,* of Portland, (John Mowry, of Portland, on the brief) for appellant.

*Stanley J. Mitchell,* Deputy District Attorney, of Oregon City (Fred A. Miller, District Attorney, of Oregon City, on the brief) for respondent.

BELT, J. The appellant, Ernest Darwin Sprague, and his co-defendants, Ivan Deloss Sprague, Warren Leroy Mulvaney and Elmer Lee Mulvaney, were indicted for the crime of murder in the first degree— the charging part of the indictment being as follows:

> "The said Ernest Darwin Sprague, Ivan Deloss Sprague, Warren Leroy Mulvaney and Elmer Lee Mulvaney, on the 2nd day of May A. D., 1942 in the said County of Clackamas and State of Oregon, then and there being, did then and there unlawfully and feloniously, purposely and of deliberate and premeditated malice, kill one Charles J. Officer by some means and manner to the grand jury unknown and by some means, instruments and weapons to the grand jury unknown, said act of defendants being contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

Appellant and his brother were tried together, resulting in an acquittal of Ivan Deloss Sprague and a verdict of manslaughter against the appellant. Upon conviction of the appellant, the charge against the Mulvaney brothers was dismissed.

In view of the assignments of error, a very brief statement of the facts will suffice. There was no motion for a directed verdict of acquittal, nor was any exception taken to the instructions of the court.

About 5 o'clock in the afternoon of May 2, 1942, the Sprague brothers and the Mulvaney brothers—all

young men in their early twenties—went to the "Desert Inn", a "beer parlor" on the super-highway between Oregon City and Portland, to drink more beer and to play the pinball and slot machines. While at this place, the Sprague boys—who were in an intoxicated condition—became boisterous and a fight started between them and the deceased, "Bud" Officer, who had the pinball and slot machine concession at the "Desert Inn". Officer was a young man 30 years of age and weighing 180 pounds, but because of being soft and flabby he was no match for either of the Sprague boys.

The evidence introduced by the state showed that although Officer was practically out on his feet, he was pulled out into the street, where the fight continued. Officer was knocked down several times, and, according to appellant, "the last time he hit his head on the black-top pavement and he stayed down." According to some of the witnesses for the State, one of the Mulvaney boys ran and jumped on Officer with both feet while he was down.

As a result of the fall, the decedent's skull was fractured, and he never regained consciousness. There is no evidence tending to show that he was struck by any instrument or weapon as charged in the indictment. The Sprague brothers carried Officer back to the door of the "Desert Inn", and hurriedly drove away in Ivan's automobile at a speed between 50 and 60 miles per hour.

After the Spragues were arrested and while in custody of the law both of them signed statements, received in evidence, reciting in detail their versions of the fight and their drunken carousing for several hours prior to the fight at the "Desert Inn."

The appellant in his written statement thus described the fight at the "Desert Inn":

"* * * we started to play the pinball machines and three of us had a bottle of beer apiece; Ivan and I horsed around a little, he pretended to strike me and I sat down in a booth like had [he] had struck me; I got up then and Ivan had picked up my beer from where I set in on the window sill; some fellow in there with whom we later fought, came around from behind the bar and said, 'You fellows go on and get out of here', and grabbed the bottle of beer out of my brother's hand; I made a remark to him that that was my beer and I wanted to drink it; about half of it was spilled; about this time my brother Ivan slipped up and struck him with his fist, I think in the face; he then made a pass at me with the bottle; I ducked and hit him in the face; and the bottle flew out his hand and hit a lamp behind the bar; some fellow sitting at the bar with a woman said, 'That will be enough of that, you fellows, get out of here'; my brother back-handed him one in the face; the woman working there tried to get between us and stop the fight; we backed out the door, the other two fellows followed us out; my brother struck the man that had come out from the bar; then Ivan started with the other fellow and I with the fellow that had been behind the bar; we fought around for some time; he tore my coat in the struggle; I knocked him down several times; the last time he hit his head on the black-top pavement and he stayed down; I tried to pick him up and my brother helped me, we carried him inside and placed him on the floor; we went outside and the fellow that my brother had been fighting with was arguing with the other fellows; I went around to the front of the car and I bent the front license plate, so that it couldn't be read; we then left and some one got in his car and followed us; we turned left on River road, where we lost him, and then we went back to Portland."

It is admitted by appellant that the above written statement is true and that it was freely and voluntarily executed. Appellant, however, objected to that part of the written statement (not quoted) which pertained to his activities prior to the fight in question. It is asserted by appellant that such evidence was irrelevant and tended to show that he had committed crimes other than that for which he was indicted.

The matter referred to by appellant as prejudicial was a detailed recital of his drinking at various night clubs and "beer parlors" in the city of Portland, commencing about one o'clock Saturday morning—after Ivan had finished the "swing shift" at a shipyard—and continuing until the time of this unfortunate tragedy. It also appeared from the written statement received in evidence that as Ivan drove his automobile into Oregon City about two hours prior to the time of the fight at the "Desert Inn", he locked bumpers with a parked car, and that the appellant had a heated argument with the owner of the parked car and "chased him back" into a building. The written statement of Ivan Sprague was to the same effect.

Appellant claims that he was engaged in an ordinary fist fight in which he was on the defensive, and that Officer's death was purely accidental. If the evidence offered by the state is believed—and the jury apparently accepted it as true—the fight was far from being fair, and the decedent came to his death as a result of gangster tactics. In other words, the jury, as evidenced by its verdict, must have believed the fight to have been a cruel and brutal assault upon the decedent.

The other crimes referred to by appellant are thus summarized by him in his brief:

"(a) The offense of driving and operating a motor vehicle so recklessly as to collide with a parked car;

"(b) The offense of threatening and attempting to assault the owner of the parked car;

"(c) The offense of failing to give their names or any other required information to the owner of the parked car;

"(d) The offense of purposely mutilating the license plates on their own car in order to avoid detection; and

"(e) That unpleasant offense which ordinarily results in the charge that is commonly called 'hit and run' ".

■ We think that it was relevant to the issues to show that appellant, prior to the attack upon the decedent, had indulged in intoxicating liquor. *Beaird v. State*, 215 Ala. 27, 109 So. 161; *State v. Jernigan*, 156 S. C. 509, 153 S. E. 480; *Lewis v. State*, 125, Tex. Crim. Rep. 66, 65, S. W. (2d) 771; *Harshbarger v. Murphy*, 22 Idaho 261, 125 Pac. 180, 44 L. R. A. (N. S.) 1173, Ann. Cas. 1914A, 958; *Caudill v. Commonwealth*, 217 Ky. 403, 289 S. W. 371; *Bagley v. Mason*, 69 Vt. 175, 37 A. 287. In view of his contention that the death of Officer was accidental, the mental state or intent of the accused was a matter of pertinent inquiry: Underhill's Criminal Evidence, 4th Ed., § 183. It is common knowledge that some men while under the influence of intoxicating liquor are brutal and quarrelsome. *Graham v. State*, 126 Tex. Crim. Rep. 531, 69 S. W. (2d) 73. It seems that appellant was of such type. That he was looking for trouble is evidenced by his altercation with the owner of the parked car two hours prior to the fight in question.

■■ The appellant was not the owner or driver of the car, and therefore the "offenses" of driving recklessly and failing to give the required information to the owner of the parked car can have no application to the appellant. The mutilation of the license plate was a part of the *res gestae*, and evidence thereof was admissible to show an effort to avoid detection. The flight of appellant from the scene of the alleged crime was clearly admissible. We see no need of discussing the law as to the admissibility of evidence of other crimes contained in a written statement or confession, for the simple reason that no other crimes were involved so far as appellant is concerned.

■ The written statements of appellant and his brother were erroneously referred to by counsel and the court as confessions. As to the distinction between admissions and confessions, see *State v. Porter*, 32 Or. 135, 49 Pac. 964; *State v. Weston*, 102 Or. 102, 201 Pac. 1083; and *State v. Fisher*, 132 Or. 696, 288 Pac. 215. No exception was taken to the court's instructions relative to the alleged "confessions", and no point is made in the briefs concerning this question. We have no doubt that, had the court's attention been directed to the well-recognized distinction between admissions and confessions, the error would have been corrected.

Finding no error in the record that warrants a reversal, it follows that the judgment of conviction must be affirmed.