122 So.2d 731

Thomas THOMAS, Jr.

v.

STATE.

8 Div. 576.

Court of Appeals of Alabama.

April 19, 1960.

Rehearing Denied May 24, 1960.

Rowan S. Bone and Hinton & Torbert, Gadsden, for appellant.

21

MacDonald Gallion, Atty. Gen., and Jos. D. Phelps, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

Under an indictment charging murder in the first degree this appellant has been adjudged guilty of manslaughter in the first degree and sentenced to the penitentiary for a term of three years.

The evidence presented by the State tends to show that a discussion took place between the appellant and the deceased as to whether the deceased had backed his automobile into the appellant's parked car; when deceased denied he had hit appellant's car the appellant called him a damned liar, and told him he had.

At this juncture appellant shot the deceased with a pistol, inflicting a wound from which deceased died in a few hours.

The evidence presented by the defense was to the effect that the deceased backed his automobile into appellant's parked automobile, and was about to drive away when appellant called to him to stop.

Both men got out of their automobiles and approached each other. According to several of the defense witnesses the deceased asked appellant if he knew who he was stopping, and informed the appellant that he (deceased) was the "baddest s—— o—— b—— in Huntsville." The appellant thereupon said he would call the police to settle the matter and started walking away. When he had proceeded a few steps one of appellant's companions called to him to "look out." Appellant wheeled around and saw the deceased bearing down on him with his hand in his pocket. Appellant pulled his pistol and shot deceased when he was two or three feet away.

During his direct examination, the appellant was asked by his attorney:

"Q. So you were scared, weren't you, Tommy?"

The State's objection to this question was sustained.

Appellant's counsel argues that under the doctrine of Scott v. State, 249 Ala. 304, 30 So.2d 689, the ruling in the above instance constituted error, and should cause a reversal of this judgment.

We pretermit consideration of appellant's contentions for the reason that the record shows the following question and answer almost immediately prior to the ruling complained of:

"Q. Tommy, when this man got out of the automobile, and you looked at the size of him and you heard him cursing you and abusing you and telling you how tough he was were you afraid or were you not? A. Yes, Sir, I was really afraid."

It is obvious that the appellant had already abundantly shown his emotional state as to fear by the above excerpt, and no injury probably injurious to any substantial right of the appellant resulted from the ruling. Sup.Ct.Rule 45, Code 1940, Tit. 7 Appendix.

In the trial below the appellant presented three witnesses to affirm his good reputation, and his good reputation for peace and quietude. The first such witness was Simmy Goggans.

Goggans on direct examination testified he had known the appellant some twenty-two years, and knew appellant's reputation in the community in which he lived and that his reputation was good, and further that appellant's reputation for peace and quietude was good.

On cross-examination the witness Goggans testified as follows:

"Q. Now, his reputation that you testified to as being good, is that because you have known yourself? A. Well, not altogether. I never have known of him getting into anything.

"Q. Have you heard people talk about him, or is it what you know personally? A. What I know personally.

"Q. Based on your personal observations of him is what you are testifying about? A. That's all, personal."

On re-direct examination the witness testified he had never heard any "bad talk" concerning the appellant.

On re-cross the witness stated he was basing his opinion on what he knew rather than on what people said.

On motion of the solicitor the court excluded Goggans' testimony and instructed the jury to forget they ever heard it.

Counsel for appellant argue strenuously that this exclusion of Goggans' testimony constituted reversible error in that, despite the equivocation resulting from his statements on cross-examination that he was basing his opinion on what he knew personally, witness had known appellant for a long number of years and had never heard anything derogatory concerning him, and such negative proof was sufficient to support his testimony as to appellant's good character.

In Glover v. State, 200 Ala. 384, 76 So. 300, 301, a witness for the State testified he had known the deceased for a long time and that he was not considered a bloodthirsty or dangerous person.

On cross-examination this witness testified that he was basing his answer on his own opinion, and not on what people said.

The court overruled the defense motion to exclude the testimony of this witness.

In approving this ruling, our Supreme Court, per Sayre, J., wrote:

"To say that the witness has never heard anything against the character of the individual whose character is properly under inquiry is negative in form, but often more satisfactory than evidence of a positive sort. Hussey v. State, 87 Ala. 121, 6 South. 420. The witness in the case before us was qualified by his acquaintance with deceased and his residence in the community to speak of the character of deceased, and on his direct examination he did so speak. We are not of the opinion that the court's ruling against the motion to exclude should be held for error on the strength of the witness' subsequent ambiguous statement that his answer was based on his own opinion. In a very correct sense, as we have indicated, the witness could only testify to his own opinion; i. e., his opinion as to the general opinion of the community. That he did not base his opinion on what people said was not necessarily fatal to his competency as a witness, for, properly enough, his opinion may have been based on the fact that people said nothing; and his subsequent further

cross-examination tended to establish this as the foundation of his opinion. We are of the opinion that the whole testimony was properly submitted to the jury for their consideration * * * ”

: It is to be noted that in the Glover case, supra, the court was considering testimony relative to the character of a deceased, rather than testimony relative to the character of a defendant wherein the limitation as to the time covered by the testimony is of importance.

■ When a defendant places his general reputation, or his reputation for peace and quietude in issue, whether the defendant has testified or not, such must be limited to the time preceding the offense. Williams v. State, 250 Ala. 549, 35 So.2d 567; Jenkins v. State, 212 Ala. 484, 103 So. 458; Forman v. State, 190 Ala. 22, 67 So. 583.

■ When a defendant has testified, and the State seeks to impeach him by evidence tending to show his bad general character, and his bad character for truth, then such impeaching testimony may extend up to the time of trial, rather than only to the time of the offense. Dodd v. State, 32 Ala.App. 504, 27 So.2d 259; Smith v. State, 197 Ala. 193, 72 So. 316. In rebuttal to such impeaching evidence a defendant may then offer character evidence extending up to the time of trial. Smith v. State, supra.

■ If a defendant has testified but has not otherwise put his character in evidence, then the State may offer evidence of his general bad character, but only as affecting his credibility as a witness, and in such circumstances it is error if the trial court does not so limit such evidence upon request of the defendant. Boyette v. State, 215 Ala. 472, 110 So. 812.

■■ Under the above principles relating to character evidence, the evidence offered by the appellant to affirm his good character in general, and as to peacableness, should have been limited to the time preceding the commission of the offense, and when not so limited, the evidence was properly excluded. Williams v. State, 33 Ala.App. 304, 35 So.2d 562. Nor will the fact that the solicitor's motion to exclude was based on other grounds affect the validity of the court's ruling since a correct ruling will not be disturbed because of insufficient or wrong reasons therefor. Vol. 2A, Ala.Dig., Appeal and Error, ☞854(2) for authorities.

■ Over appellant's objections the court permitted Mr. Robert Johnson, State Toxicologist, to testify that in his opinion the pistol with which deceased was shot was between 18 and 30 inches distance from deceased at the time of firing, and in the witness' opinion was in the neighborhood of 24 inches.

In addition to a B.S. degree in Chemistry, Mr. Johnson holds an M.S. degree in Biological Chemistry, and had done post-graduate work at Ohio State University, and in the Medical School of the University of Alabama.

Mr. Johnson has been a State Toxicologist for four years, and has participated in some 12 to 24 cases involving ballistics, under the direction of Mr. Brooks, another State Toxicologist, or of Dr. Rehling, director of the State Department of Toxicology. Mr. Johnson has also read and studied some material on ballistics, among this material being Hatcher's Book of Fire Arms Identification.

Mr. Johnson has also made a study of the methods of determining the distance that unburned powder will travel from a particular weapon firing a certain type shell.

The pistol used by the appellant had been turned over to Mr. Johnson, together with the five unfired shells and one fired shell in the pistol at the time it was given to the officers by the appellant. The shirt worn by the deceased when he was shot by the appellant was also turned over to Mr. Johnson. The shirt bore a powder burn.

Using shells of the same type as those found in the pistol at the time of its surrender by the appellant, and in fact using one of the shells found in the pistol, Mr. Johnson made test firings with appellant's pistol. On this experimentation Mr. Johnson based his opinion of distance.

"The criterion for admission of expert testimony is that the witness, by study, practice, experience, or observation as to the particular subject should have acquired a knowledge beyond the ordinary witness. Scott v. State, 34 Ala.App. 18, 37 So.2d 670; Daniel v. State, 31 Ala.App. 376, 17 So. 2d 542. The question of a witness' qualifications to testify as an expert is a matter largely within the discretion of the trial court. See 6 Ala.Dig., Crim.Law ☞481 for innumerable authorities." See Alexander v. State, 37 Ala.App. 533, 71 So.2d 520, 524.

Clearly no abuse of discretion was present in the court's ruling in view of Mr. Johnson's qualifications to testify as an expert.

Further, two of appellant's witnesses testified that appellant was about two feet from deceased when he fired and appellant himself stated the distance to be two or three feet. Mr. Johnson's estimate of two feet did not create any material conflict in the evidence and appellant was not probably harmed thereby. In fact, since appellant sought to justify the killing on the grounds of self-defense growing out of a sudden unprovoked attack, it would appear that Mr. Johnson's testimony placing the deceased a foot closer than the maximum distance under appellant's testimony would redound to appellant's benefit, since the closer the deceased the more iminent the alleged attack.

Bessie Mae Hayes was presented as a witness for the defense.

She was one of the group of six who had driven together to Huntsville in appellant's automobile to see a football game, and was present when the shooting occurred.

The witness testified that after the deceased backed his car into appellant's vehicle, the appellant got out of his car and asked the deceased what he was going to do about the car.

■ She heard the deceased talking and cursing in a loud voice. He said something about being the "baddest s—— o—— b—— in Huntsville." She heard the fussing and was afraid to go around the appellant's car to the side where appellant and deceased were.

The record then shows the following:

"Q. Was the man who was cursing (deceased) talking in a low tone or a loud tone? A. He had a loud voice.

"Q. He had a loud voice? A. Yes, sir.

"Q. Did he sound mad?"

To this last question "Did he sound mad?" the court sustained the State's objection.

Counsel urges error in this ruling, in that a witness may testify that another "seemed mad." See Mealer v. State, 242 Ala. 682, 8 So.2d 178, and therefore a witness should be permitted to testify that another "sounded mad."

No need arises to pass on this point in that just prior to the instant ruling this witness had testified that the deceased was fussing, talking in a loud voice, and cursing, and she was afraid to go around to the side of the car where deceased and appellant were.

This testimony was admitted without objection, and tended to show by vivid details, rather than by a short-handed rendition of fact, that the deceased was angry or mad.

No injury probably injurious to any substantial right of the appellant resulted from this ruling. Sup.Ct. Rule 45.

■ Counsel for appellant also complain that the refusal of a certain written requested charge was erroneous.

Our review of this question is foreclosed by the fact that, as it appears in the record, the charge is not marked refused and signed by the trial judge. Section 273, Title 7, Code of Alabama 1940; Fendley v. State, 36 Ala.App. 149, 53 So.2d 397; Freeland v. State, 28 Ala.App. 268, 182 So. 414; Batson v. State, 216 Ala. 275, 113 So. 300; Adcock v. State, 30 Ala.App. 187, 2 So.2d 472.

This judgment is due to be affirmed, and it is so ordered.

Affirmed.