COBB, Judge.
On June 6, 1997, a Jefferson County grand jury indicted Aloysius Seay for murder. Subsequently, a jury convicted Seay of manslaughter, a violation of § 13A-6-3, Ala.Code 1975, and the trial court sentenced him to 15 years’ imprisonment. The trial court also ordered Seay to pay $3,000 to the victims compensation fund and $2,321.50 in restitution. The trial court recommended that Seay undergo drug rehabilitation and that he attend meetings of Alcoholic Anonymous while he was in prison. (C. 5-6.)
On September 13, 1996, Seay’s brother, Enrico, and Kenneth Colbert, the victim, attended two parties. In the early morning hours of September 14, 1996, after *33 they had attended the parties, Seay and Colbert went to Seay’s home, along with a female acquaintance, so Colbert could “sober up.” (R. 96.) Colbert went into Seay’s bedroom. At some point, Seay came home and went into his bedroom. When he saw Colbert in his bed, Seay said, “why [are] you in my bed?” and then fired his gun into the air. (R. 98.) Colbert ran into the front room and said, “[d]amn, man, why you did that, got my ears ringing.” (R. 98.) Although Enrico tried to stop him, Colbert went back into Seay’s bedroom. The acquaintance testified that she and Enrico were near the front door when she heard another gun shot. Colbert stumbled out of Seay’s bedroom saying “[d]amn, man, he shot me.” (R. 101.)
Birmingham Police Officer Garland Shorter was dispatched to Seay’s home in the early morning hours of September 14, 1996. Officer Shorter and another officer arrived at the same time. They knocked on the front door and Seay answered. Officer Shorter asked if someone had been shot. Shorter testified that Seay “blurted out, T shot him’ ” explaining to the officers that when he arrived home, Kenneth Colbert was lying in his bed. (R. 18.) Seay said that he told Colbert to get out of his bed and that Colbert began cursing. Seay fired a shot into the air, which, he said, made Colbert jump out of the bed and get “in his face.” Then Seay shot him. (R. 20.) After Seay told the officers what had happened, the officer assisting Officer Shorter patted Seay down for weapons. The officers asked Seay where the gun was and Seay pointed to his left pants pocket. Officer Shorter retrieved the revolver. The gun contained two spent shells and three live shells. (R. 77.) The officers then went inside Seay’s home and found the victim lying on the floor in the front room.
Later that morning, police Sgt. Kenneth Glass read Seay his Miranda rights and spoke with him. (R. 84-85.) During the audiotaped statement, Seay admitted that he “snapped” and that, before he knew it, he shot Colbert. (State’s exhibit number 48.) Seay stated during the tape-recorded statement that he saw Colbert reaching behind his back, although he said he did not know if Colbert was reaching for a weapon.
The medical examiner testified that Colbert died from a gunshot wound to the lower right abdomen. He testified that the small amount of gunpowder on the shirt indicated an intermediate range gunshot wound. Stippling, caused by gunpowder, causes marks on the skin and occurs when a gun is fired at close range to the skin. (R. 52-53.) The medical examiner said that the maximum range for an intermediate wound is three feet between the barrel of the gun and the wound. (R. 55.) He further testified that Colbert’s blood-alcohol content was .23 when he died.
Forensic expert David Higgins testified that the bullet retrieved from Colbert’s body had been fired from the gun recovered from Seay. (R. 18, 35.)
At trial Seay argued, through the testimony of his brother Enrico, that he acted in self-defense. He testified that in 1996, Aloysius Seay and Kenneth Colbert had gotten into an argument. Also in 1996, Enrico and Aloysius witnessed an argument between Colbert and his girlfriend where Colbert had threatened his girlfriend with a knife and had pushed her into a wall, damaging the wall. Enrico further testified that in 1995, a friend of his, Derrick, and Colbert got into a “shoving match” in front of him and Seay. (R. 148.)
Enrico testified that Seay came home while he and Colbert were at Seay’s home. Aloysius asked Enrico to turn down the music and he then went to his bedroom. Enrico testified that he heard Seay tell Colbert to get out of his bed. Enrico heard a gunshot and went into the bedroom. He said that Seay and Colbert were arguing and shoving each other. Enrico got between them and told Colbert to go to the front room. He said that Col *34 bert went into the front room and sat on the couch. Enrico also went into the front room. Enrico testified that Colbert began cursing, pushed him into a wall, and began walking toward the bedroom. Enrico testified that he yelled to Seay because Colbert was reaching for his back pocket. Enrico testified that Seay turned around, saw Colbert reaching for his back pocket, and told Colbert “not to do it.” Colbert said “f_you” and headed toward Seay. Then Seay shot him. (R. 155.)
Seay argues that the trial court erred to reversal by prohibiting him from presenting character evidence of his good reputation in the community and evidence of the specific trait of peacefulness. We agree.
During the defense’s case-in-chief, the defense attorney called Gwendolyn Miller as a character witness. When the defense attorney asked Miller if she knew Seay’s general reputation in the community, the trial court intervened and the following colloquy transpired:
“THE COURT: Hold it just a minute. His reputation is not at issue at this point.
“MR. POLSON [Defense attorney]: General reputation, Your Honor.
“THE COURT: None of his reputation is at issue, is it?
“MR. POLSON: Yes, sir.
[[Image here]]
“MR. POLSON: The evidence is a pertinent trait of character....
“MR. POLSON: ... [W]e’re not putting on testimony about truth and veracity because the accused has not testified but general reputation is provable whether or not the accused has taken the stand....
“THE COURT: [Rule] 405(a)?
“MR. POLSON: Yes, sir.
“THE COURT: I don’t find anything.
“MR. POLSON: Judge, the summary to Rule 405(a).
[[Image here]]
“THE COURT: I’ll read what I’ve got here. ‘In those instances where the rules authorize evidence of character, such generally may be proven through one of two mediums of proof, either general reputation of the subject person in the community, or an opinion as to the subject person’s character. Where the criminal defense is allowed to prove the accused’s good character, however, it may be proven by reputation only. The accused may prove the character of the victim either in the form of reputation or opinion. Whenever a character witness is called to relate opinion or reputation, opponent may ask on cross-examination if the witness knows or has heard.’
“MR. POLSON: Your Honor, we’re directing the court’s attention to that part of the summary that reads, ‘The criminal defense under what is often termed a mercy rule may take the initiative to prove the accused’s good character in order to infer from such character that the accused did not commit the crime charged.’ Therefore, Your Honor, we are asking the court—
“THE COURT: All right. Let me ask you this. Have you said anything to me that says that — that gives it the exemption around his taking the stand?
“MR. POLSON: Your Honor, we’re asking the court to allow us to exercise the right granted to us under the mercy rule, proof of character.
“THE COURT: Where is it? Give me the language that says that.
“MR. POLSON: Judge, 405(a) says—
“THE COURT: Read that part that says what you’re telling me.
“MR. POLSON: ‘In all cases in which evidence of character or a trait of character is admissible except for’—
“THE COURT: That begs the question. Go ahead. Go on. Go ahead. Keep reading.
*35 “MR. POLSON: — ‘testimony as to reputation or by testimony in the form of an opinion.’
“THE COURT: Yeah, but it doesn’t say that — it says in all cases in which. It doesn’t say in all cases period.
“MR. POLSON: Well, these rules apply, Your Honor, to civil as well as criminal cases.
[[Image here]]
“MR. POLSON: In all criminal cases, the evidence of character of the accused is always an issue because he may — the jury may infer from good character that the accused would not do the act for which he is charged.
[[Image here]]
“THE COURT: ... I’m asking you if you know of any rule — I take it now that you’re telling me you aren’t putting [Seay] on [the stand].
“MR. POLSON: You’re entirely correct, Your Honor.
“THE COURT: All right. Well, I’m not going to let you put somebody here to-ril let her come in here and tell the court reporter what she was going to say.”
(R. 129-37.) Although the trial court did not allow questioning of the character witness in front of the jury, the trial court permitted the defense attorney to question the witness outside the presence of the jury. (R. 138.)
Gwendolyn Miller, the defense’s character witness, testified as follows:
“Q. All right. I’m asking you, please, ma’am, if you know [Seay’s] general reputation in the community in which he lives?
“A. Yes, Ido.
“Q. Is that reputation good or bad?
“A. Good.
“Q. All right. And do you know his general reputation in the community for being a peaceful and quiet person, a nonviolent person?
“A. Yes, Ido.
“Q. Is that good or bad?
“A. Good.”
(R. 138.)
Rule 404(a)(1), Ala.R.Evid., states “[e]vidence of a person’s character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: ... Evidence of character offered by an accused.... ” Alabama law has long held that:
“Generally, character evidence (acts, reputation, or opinion of character) is inadmissible when offered as a basis from which to infer how a person acted on the occasion in question. A special exception to this general exclusionary rule, however, is afforded the criminally accused. The criminal defense, under what is often termed the ‘mercy rule,’ may take the initiative to prove the accused’s good character in order to infer, from such character, that the accused did not commit the crime charged.
“While the accused is given special exemption from the prohibition on character, good character may be evidenced through only one medium of proof. The accused’s character evidence is limited to general reputation in the community. No allowance is made, as is true under the federal mercy rule, for a character witness’ opinion as to the accused’s character. The accused’s reputation may be as a whole or attached to a trait that is pertinent to the crime serving as the basis of the prosecution.”
Charles W. Gamble, Gamble’s Alabama Rules of Evidence, § 404(a)(1)(A) at 59 (1995); see also Ex parte Woodall, 730 So.2d 652 (Ala.1998); Jones v. State, 53 Ala.App. 690, 304 So.2d 34 (1974). Since before the 1900s, Alabama law has afforded an accused the right to prove his or her good reputation in the community and character evidence of a specific trait, such as peacefulness. See Thomas v. State, 41 Ala.App. 19, 122 So.2d 731 (1960); Bogle v. State, 27 Ala.App. 215, 169 So. 332 (1936); *36 Griffin v. State, 26 Ala.App. 473, 162 So. 547 (1935); Beaird v. State, 215 Ala. 27, 109 So. 161 (1926); Carson v. State, 50 Ala. 134 (1874). Moreover, Rule 404, Ala.R.Evid., does not require the defendant to take the stand before the defendant is permitted to present character evidence regarding the defendant’s good reputation in the community or character evidence of a specific trait. Thompson v. Nagle, 118 F.3d 1442, 1452 (11th Cir.1997) (“Alabama law allows good character testimony as part of the defense even if the defendant does not testify”); see also Hope v. State, 476 So.2d 635, 643 (Ala.Cr.App.1985); Thomas v. State, 41 Ala.App. 19, 122 So.2d 731, 734 (1960).
Other states have addressed this issue and have held that prohibiting a defendant from presenting character evidence of general reputation or a specific trait constitutes reversible error. See State v. Squire, 321 N.C. 541, 364 S.E.2d 354 (1988) (holding that trial court erred to reversal by precluding the defendant from offering general character traits other than peacefulness and truthfulness); Finnie v. State, 267 Ark. 638, 593 S.W.2d 32 (1980) (the trial court committed reversible error by prohibiting the accused, who was charged with murder and who claimed self-defense, from introducing evidence of his reputation for being peaceful); see also United States v. Lewin, 467 F.2d 1132, 1139 (7th Cir.1972) (the court held that the district court was unduly restrictive when it allowed the defendant from presenting evidence of his good character).
The Alabama Supreme Court addressed a similar issue in 1926. In Beaird v. State, 215 Ala. 27, 109 So. 161 (1926), six witnesses testified on behalf of the defendant, stating that they knew the general character of the defendant and that his general character was good. Id. at 162. However, when the defense attorney asked the first character witness whether he knew the defendant’s general character for “peace and quiet,” the trial court sustained the State’s objection to the question. The Alabama Supreme Court held that the trial court erred to reversal by prohibiting the defense attorney from inquiring into the defendant’s peaceable character. The court stated:
“The general character of a defendant for peace and quiet in the community in which he resides has reference and analogy to the subject of murder and manslaughter, the offenses charged in this indictment, and the court should have permitted this testimony to go to the jury. It is competent and relevant as original testimony for the defendant.”
Id. at 163.
We cannot say that the exclusion of the character evidence offered by Seay was harmless error. We cannot determine what effect evidence of his good reputation in the community and evidence of his peacefulness would have had in the jury’s deliberations on whether he acted in self-defense, especially in light of the fact that the jury convicted him of the lesser included offense of manslaughter. Therefore, we hold that the trial court erred by prohibiting Seay from presenting evidence as to his good, peaceable reputation in the community.
Because we are reversing on the grounds that Seay was wrongfully prohibited from presenting testimony of his good reputation and for being a peaceful person, it is unnecessary to address the other issue he raises on appeal.
For the above-stated reasons, the judgment of the trial court is due to be, and is hereby, reversed and the cause remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
LONG, P.J., and McMILLAN, BASCHAB, and FRY, JJ., concur.