276 So.2d 583

**Emory Earl ALLEN**

v.

**STATE of Alabama.**

**SC 314.**

Supreme Court of Alabama.

April 19, 1973.

David L. Barnett, Mobile, for appellant.

William J. Baxley, Atty. Gen., H. Thomas Armstrong, Sp. Asst. Atty. Gen., Scottsboro, for the State.

FAULKNER, Justice.

Senseless killing of man by man is the bane of this and every era.

Occurring in connection with sports and athletic events, violence has been traditionally more characteristic of Latin America than of the United States of America. While soccer stadium riots and attacks on rival team players are well-known below the Rio Grande, football in this country is marked by better sportsmanship on the part of the losing team and its fans. This case chronicles one of the unfortunate exceptions. Yet in the larger context, of course, the sports event both here and there serves merely as an excuse for the depraved individual to commit his acts of violence. An unthinking rage, a whir of momentary madness, a pull of the trigger —and the life of a young man is gone forever.

Emory Earl Allen was convicted of murdering Aaron Gastinell. He appeals.

On the evening of September 17, 1971, Coach Turner C. Thomas led his Landry High School (New Orleans) squad into Prichard Stadium for a football game with Blount High of Prichard, Alabama. The visitors proved the stronger team, defeating and shutting out Blount by the score of 14 to 0.

Following the game, the Landry bus was pulled up in front of the high school. Not far away, Emory Earl Allen was saying:

"I'm going to get one of these mother * * *. I'm going to shoot on this m------ f------ bus."

A friend of Allen's explained to the trial court:

"[T]hey say they going to shoot on the bus because, you know, Blount lost the game and they going to shoot Landry because they won, you know, like that.

\* \* \* \* \* \*

"Q. All right. Now, when he said that, will you tell the jury what he did.

"A. He aimed the gun and shot.

"Q. All right. In which direction did he shoot?

"A. Toward the bus."

At this moment, near the bus, Coach Thomas of Landry High was talking with his assistant coach, Mr. Vavasseur, and the assistant principal of Blount, Mr. Washington, about taking the team to a restaurant for a post-game meal. Thomas testified:

"* * * I guess about a second or two after I told Coach Vavasseur this and continued to talk to Mr. Washington, it sounded like someone was throwing bottle glass at the sidewalk. * * * So I looked to my right and one of the kids said, 'Oh, God, Coach, they are shooting at us.' * * * And so when I knocked them down, we were lying on top of Aaron Gastinell in front of the bus. I told them, I asked them to feel Aaron Gastinell's pulse. One of the kids said Aaron Gastinell wasn't breathing. * * * I noticed Wilton Lombard had blood and flesh where something had penetrated his face. * * * [Willie] Walker was hit with a pellet directly into his right eye."

Gastinell was dead. Other Landry players were seriously wounded. Mr. Washington, the Blount assistant principal, was also hit.

On the strength of this and other uncontroverted testimony, the jury found Emory Earl Allen guilty of second-degree murder and imposed a sentence of life imprisonment.

Four alleged errors are complained of on this appeal, which was transferred to this Court from the Court of Criminal Appeals: (1) that the trial judge showed bias and prejudice against the defendant through non-verbal facial expressions and gesticulations; (2) that similar evidence given by many witnesses, including other wounded ballplayers, was improper cumulative testimony; (3) that the State impeached one of its own witnesses by use of a prior inconsistent statement; and (4) that the evidence against the defendant consisted solely of uncorroborated accomplice testimony.

Appellant strenuously complains of facial expressions and hand movements by the trial judge which are said to have displayed bias against him. The following exchanges took place between counsel and the court:

"MR. BARNETT: I would like to make note at this time that in several instances Your Honor has, from facial expressions and hand movements, has indicated disgust with the questions in this particular case, and I would like to note my objection to that.

"THE COURT: Your objection is noted. I can't do too much about my face, Mr. Barnett. * * * And if you don't want to see me kind of wince, don't ask the same question three times.

*    *    *    *    *    *

"MR. BARNETT: All right, sir. I object to Your Honor's continual facial expressions of disgust in overruling my objections with the intimation and the information that they are frivolous."

Appellant asserts that this led to the situation that "the jury was informed most emphatically through his conduct that the Judge was not impartial and had made up his mind to communicate to the jury his feelings about the case in a non-verbal manner."

The trial judge is a human being, not an automaton or a robot. He is not required to be a Great Stone Face which shows no reaction to anything that happens in his courtroom. Testimony that is amusing may draw a smile or a laugh, shocking or distasteful evidence may cause a frown or scowl, without reversible error being committed thereby. We have not, and hopefully never will reach the stage in Alabama at which a stone-cold computer is draped in a black robe, set up behind the

bench, and plugged in to begin service as Circuit Judge.

■ Nevertheless, the trial judge does have a duty to be "thorough, courteous, patient, punctual, just, impartial." American Bar Association, Canons of Judicial Ethics, Canon 34. This duty of impartiality extends to demeanor. We have little doubt that facial expressions, gestures, and nonverbal communications which tended to ridicule defendant and his counsel, could, standing alone, operate so as to destroy the fairness of a trial.

■ However, we do not think enough has been shown here to establish that the substantial rights of the defendant were injuriously affected by the alleged irregularities. Title 7, Supreme Court Rule 45, Code of Alabama 1940, Recompiled 1958. No unfairness is found in the actual rulings by the court throughout the case, nor did he make any biased comments. Although we appreciate defense counsel's efforts to make a record on this issue, we would require a more detailed description in the record of the alleged gestures, facial expressions, and hand movements involved, and the points during the trial at which they were made, before predicating reversible error on them alone. From the skimpy record before us we cannot presume reversible error on this issue.

■ Often in a criminal case, defendant's plaint is that the evidence against him is too little; here, we have the interesting argument that the amount of evidence is too great. Appellant complains of the large number of witnesses permitted to testify to essentially the same events, namely defendant's cursing and pulling the trigger, and the victims being hit. Admission of cumulative testimony is within the sound discretion of the trial judge. Even though such evidence may tend to inflame the jury, its admissibility will not be affected if it sheds light upon a material inquiry or illustrates the transaction at issue. Reedy v. State, 246 Ala. 363, 20 So.2d 528

(1945). The trial judge did not abuse his discretion by permitting it here.

■ At one point during the trial, one of the many prosecution witnesses did not remember the defendant's threatening to shoot at the bus. The District Attorney attempted to remind the witness that he had earlier made a written statement to that effect. Appellant complains that this was impeachment of the prosecution's own witness, and constituted reversible error. We have held on numerous occasions that a party may refresh the memory of his witness with prior statements made. Willingham v. State, 261 Ala. 454, 74 So.2d 241 (1954); Glenn v. State, 157 Ala. 12, 47 So. 1034 (1908); Hemingway v. Garth, 51 Ala. 530 (1874).

Appellant complains that his conviction was obtained through the use of uncorroborated accomplice testimony, in violation of Title 15, § 307, of our Code.

■ The test of whether a witness is an accomplice is whether he or she could be indicted and convicted for the crime. Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973); Dykes v. State, 30 Ala.App. 129, 1 So.2d 754 (1941). Although the witnesses were standing around in the vicinity when Allen suddenly opened fire on the visiting football team, nothing in the record indicates that they themselves fired, cooperated with Allen in any way, or could have been indicted or convicted for murder themselves. Thus, their testimony was sufficient to support the conviction.

We have carefully reviewed the record in search of error. None appearing, the judgment and sentence must be and are affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL and HARWOOD, JJ., concur.

MADDOX, J., concurs in the result.