TYSON, Judge.
Ozzie Lee Hardy was indicted for robbery in the first degree. The jury found the appellant “guilty as charged in the indictment,” and the trial court sentenced him to life imprisonment without parole as a habitual felony offender.
*652 On the afternoon of January 10, 1985, Barbara Hall, the manager of the Three Flags apartment complex in Montgomery, Alabama, was in her office talking to one of the tenants, Lorraine Craig. At approximately 3:40 p.m.,. the appellant, Hardy, came into the office and asked for a lease application. Hall gave the appellant an application and told him to fill it out. The appellant then left.
Approximately ten minutes later, Hardy, the appellant, returned with the application. Hall was unable to read some of the handwriting on the application so she went over the information with the appellant. The name on the application was Paul Woodhouse.
After reviewing the application, Hall told the appellant that she would have to verify his employment and to check back with her in a few days. The appellant, Hardy, then walked out of the door and came back inside. He walked over to Hall, put a gun to her head and asked where the money was kept. She told him the money was in a drawer behind her desk. The appellant then took approximately $630 from the drawer. He instructed Craig and Hall not to move and he left. Hall then called the police.
A latent print lifted from the lease application matched a known print of the appellant’s left thumb. There were similarities between the date of birth and social security number on the application and Hardy’s own social security number and date of birth.
The appellant was arrested on February 22, 1985, in Sheffield, Alabama. When Officer Francis Fernandez of the Montgomery Police Department picked up the appellant the following day, the appellant told him that he had filled out the lease application but had not committed the robbery.
The defense presented two alibi witnesses. Mary Timmons testified that the appellant, Hardy, was at her house in Montgomery on the afternoon of January 10. He remained there until 4:05 p.m.
Tonya Timmons, Mary Timmon’s daughter, testified that she came home from school on January 10, 1985, at 3:50. The appellant was there when she arrived. At 4:05 p.m., Tonya took the appellant to pick up a friend and then dropped them off at the appellant’s mother’s house at 4:25 p.m. The appellant then came back to her house about ten minutes later.
I
Both witnesses, Hall and Craig, were shown a photographic lineup by Officer Fernandez. Hall was unable to make an identification from the photographs although she did identify the appellant at trial.
Craig immediately identified the appellant, Hardy, as the man who committed the robbery when she was shown the photographs. The appellant contends that Craig’s identification of the appellant should have been suppressed because Fernandez’s “body language” “caused” Craig to pick out the appellant’s photograph. This contention is wholly unsupported by the evidence.
Fernandez testified that he made no identification to Craig as to who the suspect was. He merely showed the photographs to her and asked if she could identify anyone in the photographs as the person who committed the robbery. Craig also testified that Fernandez did not make suggestions to her as to whom she should pick out of the photographs.
In light of this evidence, and after consideration of the five factors set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), we conclude that Craig’s identification of the appellant was reliable and was properly admitted into evidence at trial.
II
After the State rested its case, the following occurred outside the presence of the jury.
“MR. JAMES: Mary and Tonya Tim-mons are to be called on behalf of the *653 defendant in this case. We ask the judge to advise these two subjects or witnesses of their rights prior to testimony, based on the belief that they are going to be alibi witnesses. There has been testimony thus far that the defendant did, in fact, out the application [sic], that he brought in that application and he is the same man that pulled off the robbery at four o’clock, with the implication being that if they were alibi witnesses or they were present when he had the application, they were also present when the robbery occurred. We want, for the record, these two people to be advised of their rights so they will understand any ramifications of further testimony.
“MR. CRAVEN: Judge, I object to any instruction to witnesses. I believe it’s being done in this case for the purpose of intimidating them and putting them in fear of testifying in this case. I would like to submit there is not enough indicated to the court that would necessary [sic] take it to that limit. When sworn, they are sworn to tell the truth, before they take the stand.
“THE COURT: Bring them in. I know how to handle it.
(Brief pause.)
“THE COURT: Okay. State your name.
“MS. TIMMONS: Mary Timmons.
“THE COURT: Miss Timmons.
“MS. TIMMONS: And Tonya Timmons.
“THE COURT: All right. Are you mother and daughter?
“MS. TIMMONS: Right.
“THE COURT: Okay. Now, you all are here to testify as alibi witnesses, I believe. You know what an alibi witness is?
“MS. TIMMONS: (Nods head to indicate the affirmative.)
“THE COURT: I assume both of you would be dealing with where Mr. Hardy supposedly was around four o’clock on the 10th of January, 1985. Okay.
“MS. TIMMONS: (Nods head to indicate the affirmative.) Yes.
“THE COURT: That’s fine. I don’t have any problem with that. It has been brought to my attention by the prosecutor, and, of course, reflecting on the evidence that has been presented to the jury, that this robbery occurred about four o’clock. And, in fact, the lady testified that when it was over, she looked at the clock and it was one minute after four which means that the prosecutor moved me to advise you all of the charge of perjury. That simply means if you are under oath and tell something that’s not true, intentionally, during that, you are subject to be charged with perjury. Okay?
“MS. TIMMONS. (Nods head to indicate the affirmative.)
“THE COURT: That’s not used to frighten anybody or try to cause your testimony to — for any reflex on your testimony at all. But it has been — witnesses have testified that Mr. Hardy, and I don’t know if it’s true or not, but it’s been testified to that he came into the office at twenty to four and got an application, went out, filled it out, brought it back in, discussed briefly some information on the application with Miss Hall, gave it to her, walked out the door, and came right back in and committed the robbery. Miss Hall has testified that when the robbery was over, she looked at the clock and it was one minute after four.
“MS. TIMMONS: (Nods head to indicate the affirmative.)
“THE COURT: I think it’s necessary for me to explain that to you all about the testimony. And if you’re alibi witnesses, saying he was at someplace else at four o’clock, then of course, if he was with you around four, there may be argument made that he was with you at twenty minutes to four and he was with you when the robbery occurred. So, that’s why it’s necessary for me to come and bring you all in. Okay. Anything else?” (R. 126-30)
The appellant asserts that the trial court’s instructions on the subject of perjury to Mary and Tonya Timmons were prejudicial to him. We fail to see how the *654 appellant was prejudiced by these instructions.
“ ‘The unquestioned province of the court — in fact, the solemn and sacred duty of a trial judge — is the development and establishment of the truth, and in this connection it is always permissible for the court, and if it appears necessary for him to do so it is his duty, to propound to witnesses such questions as it is deemed necessary to elicit any relevant and material evidence, without regard to its effect, whether beneficial to the one party or the other. Beal v. State, 138 Ala. 94, 35 So. 58. In fact, it is a sacred duty of a judge, both in civil and criminal cases, to give strict attention to the evidence, and to all facts and incidents attendant upon the trial, to propound questions to witnesses if in his judgment he deems it necessary, and to supervise and control the proceedings before him, with a view that justice may not miscarry.’ Brandes v. State, 17 Ala.App. 390, 391, 85 So. 824 (1920).
“The trial judge is more than a mere moderator and it is his duty to conduct an orderly trial and to make certain as far as possible that there is no misunderstanding of the testimony of witnesses. Thus he may ask any question which would be proper for the prosecutor or defense counsel to ask so long as he does not depart from a standard of fairness and impartiality. Johnston v. City of Birmingham, Ala.Cr.App., 338 So.2d 7 (1976). Generally see Allen v. State, 290 Ala. 339, 342-343, 276 So.2d 583 (1973).” Sprinkle v. State, 368 So.2d 554, 561-62 (Ala.Cr.App.1978), writ quashed, 368 So.2d 565 (Ala.1979).
The trial court’s instructions to the witnesses merely conveyed to them the importance of telling the truth. He was not questioning the credibility of their testimonies in any way, particularly since they had not yet testified. Certainly a person who is aware of the consequences of giving perjured testimony is more inclined to tell the truth than one who is unaware of the ramifications of testifying falsely. Thus, it seems that these two witnesses were more apt to testify truthfully after hearing the court’s instructions. In our view, these instructions were to the appellant’s benefit, rather than to prejudice him in this instance.
The appellant claims that it was unfair to instruct the defense witnesses on the subject of perjury and not do the same to the State’s witnesses. Defense counsel did not ask the court to instruct on this matter and there is nothing in the record which indicates that the trial judge would not have given the same instructions to the State’s witnesses had he been requested to do so.
We find that the trial court’s instructions to the two witnesses on the subject of perjury did not prejudice this appellant, Hardy, and thus, no error occurred here.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.