[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 308 
The appellant, David Michael Jolly, was convicted of two counts of reckless manslaughter, violations of § 13A-6-3(a)(1), Ala. Code 1975. He was sentenced to 20 years' imprisonment for each conviction, the sentences to run consecutively.
The evidence adduced at trial revealed the following. On December 23, 1999, at approximately 11:00 p.m., Jolly was driving his Dodge pickup truck on Highway 431 when he struck head-on a Ford Mustang automobile driven by Ashley Doyle. Doyle and his passenger, Josh Gaither, died as a result of injuries they sustained in the crash.[1] A witness for the State testified that he observed Jolly drink several beers and some Jack Daniel's whiskey the night of the incident. Several witnesses at the scene testified that they had observed Jolly after the crash; that he appeared shaken and unsteady; and that he smelled of alcohol. None of the witnesses who testified that they actually heard the collision heard any noises, such as tires squealing, that sounded like brakes were applied before the impact.
Several law-enforcement officers testified that they smelled alcohol on Jolly's breath and that they saw empty beer bottles in the floorboard of Jolly's truck. Jolly, who was not asked to perform any field sobriety tests at the scene, did consent to and gave blood and breath tests several hours after the crash.[2] Jolly was arrested for driving under the influence of alcohol and was taken to the Calhoun County jail. Shortly after arriving at the jail, Jolly waived his Miranda[3] rights and, in a recorded interrogation, admitted to having had "two or three beers" several hours before the incident, but he claimed that the beer bottles found in his truck belonged to someone else. (R. 323.) Jolly also stated that he "had dozed off and [he] apparently went on the wrong side of the road and hit another car." (R. 318.) At trial, Jolly admitted to having had "a couple of beers" several hours before the crash, but testified that he was not intoxicated and that he must have fallen asleep shortly before he hit the Mustang.
 I.
Jolly first argues that the trial court erred in not instructing the jury on *Page 309 
criminally negligent homicide as a lesser-included offense to murder, the offense for which he was indicted; an instruction he claims was warranted because, according to Jolly, there was evidence to support the giving of that instruction. The State contends that Jolly's objection at trial did not raise the grounds he argues on appeal. We agree with the State.
After the trial court had charged the jury, Jolly raised the following objection to the trial court's refusal to give his requested jury charge on criminally negligent homicide:
 "Your Honor, for the record, the defendant would except to the failure of the Court to give the criminally negligent homicide charge [as] the lesser included at the end of Defendant's requested jury instruction number 7, which would request that the Court charge on § 13A-6-4, criminally negligent homicide and in relation thereto, defendant's requested jury instruction number 9, which is also a distinction on the law between the mental culpability requirement of criminally (sic) negligence, as opposed to manslaughter and recklessness, which would also support a charge of criminally negligent homicide. I think that's all, Your Honor."
(R. 764-65.)
Nowhere in his objection at trial did Jolly argue that there was evidence before the jury that would justify the giving of that instruction. See Wilkerson v. State, 686 So.2d 1266, 1274 (Ala.Crim.App. 1996). In fact, Jolly did not state any grounds in his objection to the trial court's refusal to give the lesser-included-offense instruction. See Rule 21.3, Ala.R.Crim.P. See also Miller v. State, 673 So.2d 819
(Ala.Crim.App. 1995); Greenhill v. State, 746 So.2d 1064 (Ala.Crim.App. 1999). To the extent that Jolly did arguably state a ground for his objection, it did not address whether the evidence supported the lesser-included-offense instruction; rather, it addressed the distinction between degrees of culpability; i.e., recklessness or negligence. The statement of specific grounds of objection to a jury instruction at trial waives all other grounds. See Raper v. State, 584 So.2d 544, 546
(Ala.Crim.App. 1991). See also Miller v. State, 645 So.2d 363, 366
(Ala.Crim.App. 1994); and Wasp v. State, 647 So.2d 81, 84-85
(Ala.Crim.App. 1994). Therefore, Jolly failed to preserve this issue for our review.
 II.
Second, Jolly argues that the trial court erroneously denied his motion to suppress the evidence seized from his truck pursuant to a search warrant because, he says, "the search warrant . . . was issued on the basis of an affidavit that was clearly a `bare bones' affidavit." (Jolly's appellate brief at p. 40.) The State correctly notes that the affidavit and search warrant Jolly complains of are not included in the record on appeal; therefore, this issue is not properly before this Court on appeal. See Williams v. State, 794 So.2d 441, 442 (Ala.Crim.App. 2000); Crenshaw v. State, 563 So.2d 16, 17 (Ala.Crim.App. 1989); Copelandv. State, 455 So.2d 951, 955 (Ala.Crim.App. 1984). It is the appellant's duty to check the record and to ensure that a complete record is presented on appeal. See T.T.J. v. State, 716 So.2d 258, 260
(Ala.Crim.App. 1998).
 III.
Third, Jolly argues that the trial court denied him his Sixth Amendment right to counsel at trial. Specifically, Jolly contends that he was denied the right to counsel when the trial court ordered one of his three attorneys out of the courtroom following the jury verdict, and then instructed that attorney not to return to his *Page 310 
courtroom, not even for the sentencing hearing in the instant case. The State correctly notes that Jolly did not object when the trial court entered its ruling or during the sentence proceeding and, thus, that he failed to preserve this issue for our review. See Trawick v. State,431 So.2d 574, 578-79 (Ala.Crim.App. 1983) ("The grounds urged on a motion for a new trial must ordinarily be preserved at trial by timely and specific objections."). See also Brown v. State, 705 So.2d 871, 875
(Ala.Crim.App. 1997) ("Even constitutional claims may be waived on appeal if not specifically presented to the trial court."); Mester v. State,755 So.2d 66, 69 (Ala.Crim.App. 1999); Harris v. State, 794 So.2d 1214
(Ala.Crim.App. 2000).
We note, however, that even if this issue had been preserved for review, Jolly was not actually denied his right to counsel. Three attorneys represented Jolly throughout the proceedings, and only one of those was barred from the courtroom during Jolly's sentencing hearing. Compare with Pratt v. State, 851 So.2d 142 (Ala.Crim.App. 2002) (defendant was without counsel at sentencing hearing where trial court allowed counsel to withdraw before handing down sentence). See alsoSteeley v. State, 622 So.2d 421, 425 (Ala.Crim.App. 1992) (it is well settled that, unlike the right to the assistance of counsel, the right to counsel of one's choice is not absolute). The two remaining attorneys had been substantially involved in the trial — conducting seven of the eight direct examinations during the defense's case-in-chief and nearly half of the examinations during the State's case-in-chief and the hearing on the motion for youthful-offender status, as well as making numerous motions and objections throughout the proceedings. Therefore, Jolly was not denied his right to counsel.
 IV.
Fourth, Jolly argues that the trial court erroneously denied his motion for youthful-offender status. Specifically, Jolly contends that the trial court's decision to deny him youthful-offender status was "arbitrary" and was made "without some examination of any facts to show that the defendant would be ineligible for youthful offender treatment." (Jolly's appellate brief at p. 52.) He contends that "[t]here is nothing in the record to indicate that the trial court based its decision on other factors in addition to the nature of the crime charge[d], but that youthful offender status was denied solely because of the nature of the crime charged." (Jolly's appellate brief at p. 52.)
In Mansel v. State, 716 So.2d 234 (Ala.Crim.App. 1997), this Court stated:
 "`The trial court has almost absolute discretion in ruling on applications for youthful offender status, and the actions of the trial judge are presumptively correct in the absence of a showing to the contrary.' Carden v. State, 621 So.2d 342, 345
(Ala.Cr.App. 1992).
 "`"When deciding whether to grant youthful offender status, it is expected that the nature of the crime charged, along with prior convictions of the defendant, will be considered, as well as any other matters deemed relevant by the court. No prescribed format is required. Neither is the trial court required to articulate on the record the reasons for denying youthful offender status to a defendant."'
 "Self v. State, 512 So.2d 811, 814 (Ala.Cr.App. 1987), quoting Goolsby v. State, 492 So.2d 635, 636
(Ala.Cr.App. 1986) (citations omitted).
 "`It is sufficient if the order of denial reflects that some investigation, examination, or inquiry was conducted before the application for youthful *Page 311 
offender status was denied. Talley v. State, 504 So.2d 741, 742-43 (Ala.Cr.App. 1987). A formal hearing on an application for youthful offender status is not required. Garrett v. State, 440 So.2d 1151, 1152 (Ala.Cr.App. 1983). Where it does not affirmatively appear that the trial court's decision was arbitrary or that it was made without any examination or investigation, there is no basis for overturning the trial court's decision. Wilson v. State, 563 So.2d 11, 12 (Ala.Cr.App. 1989).'
"Carden, 621 So.2d at 345."
716 So.2d at 235.
Here, the record reflects that the trial court ordered a probation officer to conduct an investigation on Jolly's application and that the trial court held a hearing on Jolly's application, during which six witnesses testified on Jolly's behalf and three witnesses testified for the State. At the conclusion of the hearing, the trial court stated:
 "Upon consideration of the investigation and the report in this case, the testimony that I have heard inside this courtroom, along with all inferences that can be drawn therefrom, statements of the attorneys in this case, and the nature of the fact situation on which these charges are based, I'm going to deny youthful offender treatment in this case."
(R.Supp. 48.)
Based on our review of the record and the aforementioned ruling by the trial court, we find no abuse of discretion by the trial court in its denial of Jolly's application for youthful-offender treatment.
 V.
Fifth, Jolly argues that the trial court improperly prohibited him from presenting evidence of his good character. The record reflects that during a sidebar conference, Jolly informed the trial court that he intended to call several character witnesses to testify as to his general reputation in the community and to give their opinions about his reputation. The State conceded that Jolly was entitled to present evidence of his general reputation in the community, but objected as to any testimony from the witnesses concerning their personal opinions about Jolly. The State also raised concerns that the testimony would become cumulative. The trial court advised Jolly that he was allowed to elicit testimony from the witnesses about his general reputation in the community and advised the parties that it would reserve any ruling on at what point the testimony became cumulative until the State saw fit to object on those grounds after Jolly had begun to call his witnesses. During the testimony of Jolly's first character witness, the trial court sustained the State's objection to the witness's testifying about his personal opinion of Jolly's character and reputation. That witness and three others then testified that Jolly's general reputation in the community was good. When Jolly called his fifth character witness, the State objected on the grounds that the testimony was cumulative; the trial court allowed that witness to testify that Jolly's general reputation in the community was good. When Jolly called his sixth character witness, the State again objected to the cumulative nature of the testimony, and the trial court sustained the objection. On appeal, Jolly contends that the trial court improperly limited his ability to offer evidence of his good character when the trial court prohibited defense witnesses from giving their personal opinions as to his reputation and when it limited the number of character witnesses he could call.
In Seay v. State, 751 So.2d 32 (Ala.Crim.App. 1999), this Court stated: *Page 312 
"Alabama law has long held that:
 "`Generally, character evidence (acts, reputation, or opinion of character) is inadmissible when offered as a basis from which to infer how a person acted on the occasion in question. A special exception to this general exclusionary rule, however, is afforded the criminally accused. The criminal defense, under what is often termed the "mercy rule," may take the initiative to prove the accused's good character in order to infer, from such character, that the accused did not commit the crime charged.
 "`While the accused is given special exemption from the prohibition on character, good character may be evidenced through only one medium of proof. The accused's character evidence is limited to general reputation in the community. No allowance is made, as is true under the federal mercy rule, for a character witness' opinion as to the accused's character. The accused's reputation may be as a whole or attached to a trait that is pertinent to the crime serving as the basis of the prosecution.'
 "Charles W. Gamble, Gamble's Alabama Rules of Evidence, § 404(a)(1)(A) at 59 (1995); see also Ex parte Woodall, 730 So.2d 652 (Ala. 1998); Jones v. State, 53 Ala. App. 690, 304 So.2d 34 (1974). Since before the 1900s, Alabama law has afforded an accused the right to prove his or her good reputation in the community and character evidence of a specific trait, such as peacefulness. See Thomas v. State, 41 Ala. App. 19, 122 So.2d 731 (1960); Bogle v. State, 27 Ala. App. 215, 169 So. 332 (1936); Griffin v. State, 26 Ala. App. 473, 162 So. 547 (1935); Beaird v. State, 215 Ala. 27, 109 So. 161 (1926); Carson v. State, 50 Ala. 134 (1874)."
751 So.2d at 35-36 (emphasis added).
Based on the above authority, the trial court properly prohibited defense witnesses from testifying as to their personal opinions about Jolly's reputation. As to Jolly's claim that the trial court erroneously limited the number of character witnesses he could call, he has cited no authority or statute to support that argument. That argument has therefore been waived. See Rule 28(a)(10), Ala.R.App.P. See also Hamm v.State, [Ms. CR-99-0654, February 1, 2002] ___ So.2d ___, ___ (Ala.Crim.App. 2002).
 VI.
Sixth, Jolly (who was 20 years old at the time of the crime) argues that the trial court erroneously denied his motion to declare §32-5A-191(b), Ala. Code 1975, unconstitutional because, he contends, the statute violates his equal-protection rights under the Eighth and Fourteenth Amendments to the United States Constitution in that he was treated differently than if he had been 21 years old at the time of the offense. Although we agree that the statute does treat those who are less than 21 years of age differently than those who are at least 21 years of age,[4] we disagree that the statute is unconstitutional.
Section 32-5A-191, Ala. Code 1975, provides, in relevant part:
 "(a) A person shall not drive or be in actual physical control of any vehicle while:
 "(1) There is 0.08 percent or more by weight of alcohol in his or her blood;
"(2) Under the influence of alcohol; *Page 313 
". . . .
 "(b) A person who is under the age of 21 years shall not drive or be in actual physical control of any vehicle if there is .02 percentage or more by weight of alcohol in his or her blood."
In State v. Spurlock, 393 So.2d 1052 (Ala.Crim.App. 1981), this Court stated:
 "The presumption exists that statutes are constitutional. This Court will not hold them unconstitutional unless convinced beyond a reasonable doubt of their unconstitutionality. Alabama Dairy Commission v. Food Giant, Inc., 357 So.2d 139 (Ala. 1978). The party challenging the constitutionality of a statute has the burden of establishing its invalidity. Jefferson County Board of Health v. City of Bessemer, 293 Ala. 237, 301 So.2d 551 (1974).
". . . .
 "`The essence of the theory of equal protection of the laws is that all similarly situated are treated alike.' City of Birmingham v. Stacy Williams Co., Inc., 356 So.2d 608, 611 (Ala. 1978). See also City of Hueytown v. Jiffy Chek Co., 342 So.2d 761 (Ala. 1977); Hubbard v. State, 382 So.2d 577 (Ala.Cr.App. 1979), affirmed, Ex parte Hubbard, 382 So.2d 597
(Ala. 1980). Equal protection of the laws does not compel uniformity in the face of difference. Hadnott v. City of Prattville, 309 F. Supp. 967 (N.D.Ala. 1970). The Equal Protection Clause does not mean that a state may not draw lines that treat one class of individuals differently from the others. The test is whether the difference in treatment is an invidious discrimination. Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973). Classification of subjects in a statute is not arbitrary and invalid if based on some difference which bears a reasonable and just relation to the attempted classification. Board of Com'rs of City of Mobile v. Orr, 181 Ala. 308, 61 So. 920 (1913).
 "Since this case involves neither a `suspect class' nor a `fundamental right', the `rational basis test' is the proper test to apply to either a substantive due process challenge or an equal protection challenge. Gideon v. Alabama State Ethics Commission, 379 So.2d 570, 574 (Ala. 1980).
 "`Under the rational basis test the Court asks: (a) Whether the classification furthers a proper governmental purpose and (b) whether the classification is rationally related to that purpose.' Gideon, [3]79 So.2d at 574."
393 So.2d at 1055-56. Here, as in Spurlock, we apply the rational-basis test because there is no suspect class and no fundamental right is involved.
Our research has uncovered no published cases addressing this issue in Alabama. However, several other states have held similar statutes constitutional. In Collins v. State ex rel. Department of Public Safety,991 P.2d 557 (Okla.Civ.App. 1999), the Oklahoma Court of Civil Appeals stated:
 "[The United States] Congress call[ed] for an under-twenty-one age distinction in the law, when, in 23 U.S.C.A. § 161(a)(3), of the [Federal Highway Safety] Act, it state[d]:
 "`Requirement. — A State meets the requirement of this paragraph if the State has enacted and is enforcing a law that considers an individual under the age of 21 who has a blood alcohol concentration of 0.02 percent or greater while operating a motor vehicle in the State to be driving while intoxicated or driving under the influence of alcohol.' *Page 314 
 "The enactment of age-specific statutes reveals Congressional belief that there is a heightened risk to public safety when minors drink and drive."
991 P.2d at 560-61. The Oklahoma statutes at issue set the alcohol concentration for a person 21 years of age or older at 0.10 percent, and set the limit for a person under the age of 21 at an alcohol concentration of "any measurable quantity of alcohol." Collins, 991 P.2d at 559. In Collins, the Court held that those statutes were "`rationally related' to the legitimate governmental ends of prohibiting under-age drinking and driving." Collins, 991 P.2d at 561. See also State v.Ferris, 762 So.2d 601 (La. 2000); Mason v. State, 781 So.2d 99 (Miss. 2000); Barnett v. State, 270 Ga. 472, 510 S.E.2d 527 (1999); State v.Luchau, 297 Mont. 415, 992 P.2d 840 (1999); Commonwealth v. Howard,969 S.W.2d 700 (Ky. 1998); State v. Crain, 972 S.W.2d 13 (Tenn.Crim.App. 1998).
Here, as in those states, the statute is rationally related to a proper government purpose — prohibiting underage drinking and driving. Therefore, the trial court properly denied Jolly's motion to declare § 32-5A-191(b) unconstitutional.
 VII.
Next, Jolly argues that "[t]he trial court's evident bias and hostility toward the defense warrants a reversal and new trial." (Jolly's appellate brief at p. 66.) In his brief, Jolly takes issue with the jury's verdict, with the fact that he did not receive youthful-offender status, with the trial judge's denial of his motion to recuse himself, with the sentences imposed by the trial court, with the trial judge's alleged tone of voice and facial expressions during the trial, and with the trial court's admonishment of defense counsel. He raised several of these issues either in his pretrial motion seeking to have the trial judge recuse himself or in his posttrial motion for a new trial. We are uncertain from our examination of Jolly's brief whether he is challenging the trial court's denial of his motion to recuse or the denial of his motion for a new trial, or both. However, because the record does not reveal any bias or hostility by the trial court that would warrant reversal on either theory, Jolly is not entitled to any relief on his claim.
In Smith v. State, 756 So.2d 892 (Ala.Crim.App. 1998) (opinion on return to remand), aff'd, 756 So.2d 957 (Ala. 2000), this Court stated:
 "When determining whether the trial court's statements are improper, this court must review comments based on the particular facts of each case. McNeely v. State, 524 So.2d 375, 380 (Ala.Cr.App. 1986). Comments by the trial court do not constitute error
 "`"`unless they have affected the result of the trial.'" Towns v. State, 494 So.2d 798, 800
(Ala.Cr.App. 1986), quoting Cox v. State, 489 So.2d 612
(Ala.Cr.App. 1985). See also McCovery v. State, 365 So.2d 358 (Ala.Cr.App. 1978).
 "`"`To constitute error the judge's actions viewed as a whole must amount to intervention which could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor. . . . A venerable line of cases indicates judicial intervention must be qualitatively and quantitatively substantial to meet this test. . . .' United States v. Robinson, 687 F.2d 359 (1982) (citations omitted)."'
"McNeely, 524 So.2d at 380."
756 So.2d at 941.
In Hodges v. State, 856 So.2d 875 (Ala.Crim.App. 2001) (opinion on return to remand), this Court stated: *Page 315 
 "`"All judges are presumed to be impartial and unbiased. Ex parte Cotton, 638 So.2d 870 (Ala. 1994). `The burden is on the party seeking recusal to present evidence establishing the existence of bias or prejudice.'" Ex parte Grayson, 665 So.2d 986, 987 (Ala.Cr.App. 1995).' Ex parte Knotts, 716 So.2d 262[, 266] (Ala.Crim.App. 1998).
 "`The burden is on the party seeking recusal to present evidence establishing the existence of bias or prejudice. Otwell v. Bryant, 497 So.2d 111, 119
(Ala. 1986). Prejudice on the part of a judge is not presumed. Hartman v. Board of Trustees, 436 So.2d 837
(Ala. 1983); Duncan v. Sherrill, 341 So.2d 946
(Ala. 1977); Ex parte Rives, 511 So.2d 514, 517
(Ala.Civ.App. 1986). "`[T]he law will not suppose a possibility of bias or favor in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea.'" Ex parte Balogun, 516 So.2d 606, 609 (Ala. 1987), quoting Fulton v. Longshore, 156 Ala. 611, 46 So. 989 (1908). Any disqualifying prejudice or bias as to a party must be of a personal nature and must stem from an extrajudicial source. Hartman v. Board of Trustees of the University of Alabama, 436 So.2d 837 (Ala. 1983); Reach v. Reach, 378 So.2d 1115 (Ala.Civ.App. 1979). Thus,
 "`"`[T]he disqualifying prejudice of a judge does not necessarily comprehend every bias, partiality, or prejudice which he may entertain with reference to the case, but must be of a character, calculated to impair seriously his impartiality and sway his judgment, and must be strong enough to overthrow the presumption of his integrity.'"
 "`Ross v. Luton, 456 So.2d [249] at 254 [(Ala. 1984)], quoting Duncan v. Sherrill, 341 So.2d 946, 947 (Ala. 1977), quoting 48 C.J.S. Judges § 82(b).'
 "Ex parte Melof, 553 So.2d 554, 557 (Ala. 1989). See also Ex parte Cotton, 638 So.2d 870 (Ala. 1994).
 "Hodges failed to meet his burden of showing that the trial court was biased or prejudiced against him. We have often stated that '"[a]dverse rulings during the course of the proceedings are not by themselves sufficient to establish bias and prejudice." Hartman v. Board of Trustees of the University of Alabama, 436 So.2d 837, 841 (Ala. 1983).' Thomas v. State, 611 So.2d 416, 419 (Ala.Crim.App. 1992).
 "`"The bias or prejudice necessary to disqualify a judge '"must stem from an extrajudicial source and must result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."' Kitchens v. Maye, 623 So.2d 1082, 1086 (Ala. 1993) (quoting United States v. Grinnell Corp., 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778, 793
(1966)) (emphasis added in Kitchens). A trial court's denial of a motion to recuse will not be reversed on appeal `unless clear evidence of bias is shown.' Adkins v. State, 600 So.2d [1054] at 1062 [(Ala.Cr.App. 1990), remanded on other grounds, 600 So.2d 1067 (Ala. 1992)]."'
 "Ex parte Knotts, 716 So.2d 262, 267 (Ala.Crim.App. 1998) (quoting Riddle v. State, 669 So.2d 1014, 1019
(Ala.Crim.App. 1994))."
856 So.2d at 898.
In Baker v. State, [Ms. CR-95-0292, January 12, 2001] ___ So.2d ___ (Ala.Crim.App. 2001), this Court stated: *Page 316 
 "`The trial judge has a duty to be thorough, courteous, patient, punctual, just and impartial. Yet, at the same time it must be remembered that he is a "human being, not an automaton or a robot." Allen v. State, 290 Ala. 339, 342, 276 So.2d 583
(Ala. 1973). In light of all the circumstances of this case, we find that the actions and comments of the trial judge were not so prejudicial as to require a mistrial or cause a reversal of this conviction.'
 "Oglen v. State, 440 So.2d [1172,] at 1176 [(Ala.Crim.App. 1983)]. Despite the great deal of care and caution a trial judge must exercise in discharging his duties, '"he is not required to be a `Great Stone Face' which shows no reaction to anything that happens in his courtroom. Allen v. State, 290 Ala. 339, 276 So.2d 583 (1973)." Gwin v. State, 425 So.2d 500, 506-07 (Ala.Cr.App. 1982), cert. quashed, 425 So.2d 510
(Ala. 1983).' Arnold v. State, 601 So.2d 145, 153
(Ala.Crim.App. 1992)."
___ So.2d at ___.
We have reviewed the record, and we find no evidence of any bias on the part of the trial court. After reviewing an investigation report and conducting a thorough hearing, the trial court stated its reasons for denying Jolly's motion to be treated as a youthful offender. There were two occasions where the trial court admonished defense counsel — the first occurred outside of the hearing of the jury and the second after the jury had returned its verdict and had been dismissed. (R. 731-37; 771-72.) The other instances complained of on appeal are simply insufficient to establish bias in this case. Additionally, Jolly was indicted for two counts of murder, and the jury found Jolly guilty of the lesser-included offense of manslaughter in each case. Contrary to Jolly's argument, the trial court did not make known its opinions about the evidence; there is no evidence indicating that the jury either noticed or was influenced by any alleged action by the trial court; and although Jolly's sentences are the harshest possible for the convictions, they are within the statutory range, the trial court explained its reasons for imposing them, and we find no violation of the principles of sentencing set out in Rule 26.8, Ala.R.Crim.P.
Therefore, we find no abuse of discretion in the trial court's denial of Jolly's motion to recuse or his motion for a new trial.
 VIII.
In addition to arguing that his consecutive 20-year sentences violate the principles of sentencing discussed in Rule 26.8, Ala.R.Crim.P. (see Part VII of this opinion), Jolly also argues that they constitute cruel and unusual punishment within the meaning of the Eighth Amendment of the United States Constitution.
In his motion for a new trial, Jolly argued that his sentences "were clearly excessive, and greatly disproportionate to sentences regularly imposed in Manslaughter cases in this jurisdiction." (C. 135.) The nonspecific references in the new-trial motion to excessiveness and disproportionality of the sentences were not sufficient to alert the trial court that an Eighth Amendment challenge was being made. "`The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.'" Culp v. State, 710 So.2d 1357, 1359 (Ala.Crim.App. 1996), quoting Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987). Because the grounds he raises on appeal are different from the grounds he argued at trial, this issue is not preserved for our review.
Assuming for the sake of argument, that Jolly had properly preserved *Page 317 
this issue, we would find no abuse of discretion by the trial court in imposing the aforementioned sentences. In Adams v. State, 815 So.2d 583
(Ala.Crim.App. 2001), this Court stated:
 "It is well settled that '[w]here a trial judge imposes a sentence within the statutory range, this Court will not disturb that sentence on appeal absent a showing of an abuse of the trial judge's discretion.' Alderman v. State, 615 So.2d 640, 649
(Ala.Crim.App. 1992). `The exception to this general rule is that "the appellate courts may review a sentence, which, although within the prescribed limitations, is so disproportionate to the offense charged that it constitutes a violation of a defendant's Eighth Amendment rights."' Brown[v. State, 611 So.2d 1194], at 1197, n. 6 [(Ala.Crim.App. 1992)], quoting Ex parte Maddox, 502 So.2d 786, 789
(Ala. 1986)."
815 So.2d 583 at 585. Jolly was convicted of two counts of manslaughter, a Class B felony. See § 13A-6-3, Ala. Code 1975. A conviction of manslaughter, as a Class B felony, carries with it a range of punishment of "not more than 20 years or less than 2 years." § 13A-5-6(a)(2), Ala. Code 1975. Based on our review of the record, we find no abuse of discretion by the trial court in imposing the aforementioned sentences on Jolly.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB and WISE, JJ., concur.
BASCHAB, J., concurs in the result.
[1] Doyle died at the scene and Gaither was pronounced dead the following day at University of Alabama in Birmingham Medical Center.
[2] The blood test was administered at approximately 1:00 a.m. and indicated that Jolly's blood-alcohol level was .09. The breath test was administered at 1:48 a.m. and indicated that Jolly's blood-alcohol level was .06.
[3] Miranda v. Arizona, 384 U.S. 436 (1966).
[4] Additionally, we note that, pursuant to § 28-1-5, Ala. Code 1975, it is "unlawful for a person less than 21 years of age to purchase, consume, possess, or to transport any alcohol, liquor or malt or brewed beverages within the State of Alabama."