BURKE, Judge.
John Lewis Thomas, Jr., was convicted of two counts of murder made capital because the murders were committed during the course of a robbery in the first degree, see § 13A-5-40(a)(2), Ala.Code 1975; one count of murder made capital because two or more people were killed by one act or pursuant to one scheme or course of conduct, see § 18A-5-40(a)(10), Ala.Code 1975; two counts of first-degree robbery, see § 13A-ÉM1, Ala.Code 1975; and one count of attempt to commit murder, see §§ 13A-6-2 and 13A-4-2, Ala.Code 1975. He was sentenced to concurrent terms of life imprisonment without the possibility of parole for each of the capital-murder convictions and to 99 years’ imprisonment for each of the remaining convictions. This appeal follows.
Because Thomas does not challenge the sufficiency of the State’s evidence on appeal, a detailed recitation of the facts is unnecessary. The evidence at trial revealed that Thomas and Antonio McNear robbed Kelley’s Grocery store on the afternoon of August 27, 2008. During the robbery, Thomas shot and killed Charles Kelley and Patricia Barginere, who were employees of the store. Betty Kelley, the owner of Kelley’s grocery, lived next door to the store. Kelley stated that, after hearing the gunshots, she ran to the store to investigate. Kelley testified that, when she opened the door to the store, Thomas fired several shots in her direction, some of which struck her house.
Further testimony established that Thomas and McNear took a cash register from the store and fled the scene. Police later arrested both men and questioned them about the robbery. A subsequent search of Thomas’s home revealed a .38 caliber pistol. Forensic analysis of the bullet recovered from Charles Kelley’s head, as well as bullets recovered from Betty Kelley’s house, indicated that the bullets had been fired from the gun found in Thomas’s home. Police also recovered the cash register from Kelley’s Grocery at the bottom of a well near Thomas’s home.
Steve Jackson testified that, at the time of the robbery, he was near Kelley’s Grocery when he heard two gunshots. Jackson stated that he saw a man standing near a pickup truck in the parking lot of the store looking toward Betty Kelley’s house. Jackson later identified the truck Thomas had been driving on the day of the shooting as the truck he saw in the parking lot of Kelley’s Grocery. Another witness, Gary Shirley, testified that he saw a pickup truck speed away from the store. Shirley also identified Thomas’s truck as the truck he saw leaving the scene. Thomas told police that he had not been inside Kelley’s Grocery in over a year. However, his fingerprints were discovered on a meat cooler inside the store near Patricia Barginere’s body.
I.
Thomas argues that the trial court erred by admitting ballistic evidence based on the testimony of Kathy Richert. Richert, a forensic scientist specializing in firearms and toolmark identification, testified that the bullet found in Charles Kelley’s head, as well as a bullet recovered from Betty Kelly’s front porch, had- been fired from the gun that was recovered from Thomas’s home. Richert stated that the protocol at the Alabama Department of Forensic Sciences is to have at least two forensic scientists perform an analysis on objects such' as the bullets in the present case. A primary analyst test-fires the gun and then compares that bullet to a bullet that was recovered from a crime scene. After-wards, another forensic scientist independently examines the bullets and compares his or her results with those of the pri *273 mary analyst. Both scientists must reach the same conclusion in order for the analysis to be valid. In the present case, Tammi Sligh was the primary analyst while Richert was the secondary analyst. Sligh subsequently took a job in Texas and did not testify at the trial.
Thomas contends that the trial court erred by allowing Richert to testify regarding the ballistic evidence. He argues that the admission of the evidence violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution which “provides that ‘[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.’ ” Crawford v. Washington, 541 U.S. 36, 42, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). According to Thomas, he should have been allowed to cross-examine Sligh regarding her conclusions because, he says, she was not an unavailable witness. Additionally, Thomas argues that the ballistics report should not have been admitted because, he says, the State failed to prove a proper chain of custody. However, neither of those arguments is preserved for appellate review.
Before trial, the State filed a motion requesting that the trial court make a pretrial determination of the admissibility of the ballistic evidence. (C. 495.) A hearing was held, during which Thomas argued against the admissibility of Ric-hert’s testimony. However, when Richert testified at trial, Thomas made only one objection. After the State elicited testimony regarding Richert’s qualifications and expertise, the following exchange took place:.
“[Prosecutor]: Your Honor, at this time we would like to have Ms. Richert recognized as an expert witness in the field of firearms and toolmark identification.
“[Defense Counsel]: No objection, except as previously noted in prior hearing.”
(R2. 3366.)[1]
The Alabama Supreme Court has held:
“‘Review on appeal is restricted to questions and issues properly and timely raised at trial.’ Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989). ‘An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.’ Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992). ‘“[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.” ’ McKinney v. State, 654 So.2d 95, 99 (Ala.Crim.App.1995) (citation omitted). ‘The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.’ Ex parte Frith, 526 So.2d 880, 882 (Ala.1987). ‘The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.’ Ex parte Works, 640 So.2d 1056, 1058 (Ala.1994).”
*274 Ex parte Coulliette, 857 So.2d 793, 794-95 (Ala.2003). Furthermore,
“ ‘ “An appellant who suffers an adverse ruling on a motion to exclude evidence, made in limine, preserves this adverse ruling for post-judgment and appellate review only if he objects to the introduction of the proffered evidence and assigns specific grounds therefor at the time of the trial, unless he has obtained the express acquiescence of the trial court that subsequent objection to evidence when it is proffered at trial and assignment of grounds therefor are not necessary.” ’ ”
Ex parte Jackson, 33 So.3d 1279, 1283 (Ala.2009), quoting Baldwin Cnty. Elec. Membership Corp. v. City of Fairhope, 999 So.2d 448, 454 (Ala.2008), quoting in turn Owens-Coming Fiberglass Corp. v. James, 646 So.2d 669, 673 (Ala.1994).
At the above-mentioned pretrial hearing, the trial court ruled in favor of the State and held that Richert’s testimony did not violate the Confrontation Clause. (R2. 485.) However, Thomas did not obtain the “express acquiescence” of the trial court that subsequent objection at trial would be unnecessary. We also note that the hearing was based on the State’s motion for a pretrial determination of the admissibility of the ballistic evidence, not a motion to exclude the evidence filed by Thomas.
During Richert’s testimony at trial, Thomas objected but failed to specify the grounds for the objection. Although he referenced an objection from a “prior hearing,” he did not specify which hearing he was referring to. Additionally, the context of the objection suggests that Thomas was objecting to Richert’s qualification as an expert. Therefore, the trial court was not put on notice of the alleged error. Accordingly, Thomas’s argument regarding the admissibility of Richert’s testimony is not preserved for appellate review.
II.
Next, Thomas asserts that the trial court erred by admitting a cash register into evidence. As noted, police discovered the cash register from Kelley’s Grocery at the bottom of a well on property near Thomas’s house. Subsequent testimony revealed that the property had once been owned by Thomas’s family. During Thomas’s interrogation, he told the police about the cash register and gave them directions to the property on which it was found. According to Thomas, the State conceded that he had invoked his right to counsel before giving that statement and that any evidence obtained as a result of that statement would be inadmissable at trial. Thomas asserts that the State “stipulated and agreed that the cash register would squarely be ‘fruit of the poisonous tree’ and would be inadmissible evidence against Thomas.” (Thomas’s brief, at 41.) Thomas contends that the State later breached that agreement.
In his brief on appeal, Thomas cites extensive caselaw regarding the enforceability and binding nature of in-court agreements. However, he does not provide any citations to the record indicating where in the record it shows that the purported stipulation was entered into. The only cite to the record he provides is to a pretrial motion to suppress. (Thomas’s brief, at 40), citing C. 574-75. However, that motion does not reference any stipulations by the State. This Court has held:
“Rule 28(a)(10), Ala. R.App. P., requires that an argument contain ‘the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and *275 parts of the record relied on.’ ‘Recitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed.’ Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002).”
Egbuonu v. State, 993 So.2d 35, 38-39 (Ala.Crim.App.2007). Because Thomas did not provide any citations to the record indicating where the purported stipulation took place, we find that he failed to adequately brief this argument as required by Rule 28(a)(10), Ala. R.Crim. P. Accordingly, it is deemed to be waived.
Out of an abundance of caution, this Court searched the record and discovered the following exchange between the State and defense counsel during a hearing on a motion to suppress:
“[Prosecutor]: Now, that being said, I reviewed [Thomas’s] statements. Everybody in our office has reviewed the statements. We have thought about it, discussed it at great length. And we believe that John Thomas, Jr. invoked his right to counsel and that it was misunderstood by law enforcement, and they continued [to] question him.
“But the State is imposing their own self-restriction based on what we believe was the [invocation] of his rights. And to be specific, it’s at minute 22, 38 seer onds in Statement 2 where the defendant said, I just need a lawyer. To us— and like I" said, we’ve researched it and thought about it and have put a lot of consideration into it, and we believe that at that point he invoked his right 'to counsel.
“So the State plans to only go into the first statement that was taken with Agent Rodgers and Heath Truman and that part of the second statement that was taken with Agent Johnny Senn up until that point. And we will proceed no further unless the defense opens the door, if that happens.
[[Image here]]
“[Defense counsel]: I don’t know if Johnny reminded him of his rights in the — in the second statement. But he said, I just need a lawyer. And anything from there throughout the — any statement made.
“[Prosecutor]: Yes, Pm with you.
“[Defense counsel]: We’re — we’re good.
“[Prosecutor]: Yeah, we’re good.
“[Defense counsel]: You know, as far as statements and everything go, we would have the issue of inducements. And then, of course, we would have the issue of anything that qualifies as fruit of the poison[ous] tree as a result of the statements.
“[Prosecutor]: Yes.
[[Image here]]
“[Defense counsel]: Judge — and I believe — and I was not a party to this conversation. There would be an issue about the — the cash register, that we would argue it would be the fruit of the poisonous tree which was obtained from the statement of Mr. Thomas. And I think that — I don’t want to speak since I wasn’t part of that, but the State agrees that the—
“[Prosecutor]: Your Honor, that — the State — I guess I should have been clearer. Not only are we saying that everything after him saying, I just want a lawyer, as far as statements is excluded. Any evidence that came solely from, such as the cash register, we are also saying is excluded.”
(R. 3059-79.) Assuming that this is the stipulation Thomas refers to in his brief, we do not find that it was breached by the State.
In the above-quoted exchange, the prosecutor agreed that any of Thomas’s state- *276 merits made after he invoked his right to counsel would be excluded. She also stated that any evidence “that came solely from” those statements, “such as the cash register,” would also be excluded. (R. 3079)(emphasis added.) Thus, the State did not foreclose the possibility that it would introduce the cash register based on something other 'than Thomas’s statements. The State subsequently introduced the cash register under the doctrine of inevitable discovery. Police officers testified that they also gained information from' Thomas’s accomplice, Antonio McNear, that would have independently led them to the cash register. Accordingly, the State did not breach its agreement and Thomas’s argument to the contrary is without merit.
III.
Next, Thomas argued that the trial court abused its discretion by refusing to allow him to cross-examine police officers about alleged inconsistent or untruthful statements they made- in pretrial hearings. Before trial, Thomas and his attorney were allowed to visit the crime scene in order to assist a defense expert with measurements of the store. The deputies who accompanied Thomas testified at a pretrial hearing that they routinely wore video cameras on their uniforms that would record their activities. Some of or all the deputies who accompanied Thomas inside the store left the cameras running while defense counsel conferred with Thomas and the expert. At a pretrial hearing regarding those recordings, Chief Deputy James LeCroy of the Crenshaw County Sheriffs Department, testified that, although he has a standing order that deputies are to use their cameras any time they respond to a call, he was not specifically aware that they used the cameras while accompanying Thomas inside the store. However, once he was made aware of the recordings, he made a copy of the video and turned it over to defense counsel and the district attorney’s office.[2]
At trial, Thomas sought to cross-examine the police officers regarding what he described as inconsistent or untruthful statements they made at the pretrial hearing regarding the use of the video cameras. The trial court refused to allow such questioning. On appeal, Thomas claims that it was error for the trial court not to allow him to question the officers about their statements. According to Thomas, such questioning was necessary because it weighed on the officers’ credibility.
This Court has held' that “ ‘[t]he latitude and extent of cross-examination, of necessity, is a matter within the sound discretion of the trial court, and, in the absence of prejudicial abuse, it is not reviewable on appeal.’ ” Reynolds v. State, 114 So.3d 61, 139 (Ala.Crim.App.2010), quoting Gobble v. State, 104 So.3d 920, 953 (Ala.Crim.App.2010). However, “ ‘[wjhere a witness’ testimony is of major importance and is strongly adverse to the party against whom he has testified, the usual discretion of a trial court has a narrow range, and it generally is required to allow proof of any important fact indicating bias of the witness.’ ” Id. (quoting Proctor v. State, 331 So.2d 828, 830 (Ala.Crim.App.1976)).
In his brief, Thomas claims that deputy LeCroy’s testimony was “wholly inconsistent with subsequent law enforcement testimony.” (Thomas’s brief, at 45.) He further claims that “[n]o single officer’s testimony was the same as any other.” *277 Thomas’s conclusion was that “the only-inference a fair-minded person could have drawn from the inconsistent statements is that at least one, if not all, of the law enforcement officers had lied under oath about the matter.” (Thomas’s brief, at 45.)
However, a review of the record reveals that the officers’ testimony, while somewhat conflicting in minor details, does not suggest that they were deliberately giving false testimony. Thomas’s characterization of the testimony is not supported by the record. Any testimony regarding the officers’ statements would not have served any relevant purpose at trial, and the court’s exclusion of that testimony in no way prejudiced Thomas. Accordingly, the trial court did not abuse its discretion by refusing to allow Thomas to cross-examine the officers regarding their pretrial testimony.
IV.
Finally, Thomas argues that, because the trial court determined that he was mentally retarded and thus ineligible for the death penalty, it did not have jurisdiction to sentence him to life imprisonment without the possibility of parole. Thomas argues that the holding in Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), which dealt with the constitutionality of Alabama’s capital sentencing as it relates to juveniles, logically extends to the mentally retarded as well. Although Thomas presented several arguments regarding the constitutionality of the -death penalty, he raised no such arguments about a sentence of life imprisonment without the possibility of parole. Accordingly, this argument was not presented to the trial court and is consequently not preserved for appellate review. See Ex parte Coulliette, supra; see also Jolly v. State, 858 So.2d 305, 316-17 (Ala.Crim.App.2002)(holding that an Eighth Amendment challenge to the exces-siveness and disproportionality of a sentence is subject to the rules of preservation).
V.
In its brief, the State claims that Thomas’s convictions for first-degree robbery violate the double-jeopardy clause because the robberies were the same robberies underlying two of his capital-murder convictions. Although Thomas did not raise this argument at trial or on appeal, the State points out that the trial court did not have subject-matter jurisdiction to adjudicate Thomas guilty of the robbery charges and that such a jurisdictional claim may be raised at any time. In Deas v. State, 844 So.2d 1286, 1289 (Ala.Crim.App.2002), quoting Borden v. State, 711 So.2d 498, 503 (Ala.Crim.App.1997), this Court faced a similar situation and held that “this type of double jeopardy violation ‘implicates the trial court’s jurisdiction to render a judgment,’ and issues that affect the subject matter jurisdiction of the trial court may be raised at any time.” Accordingly, we may address this issue sua sponte.
In Lewis v. State, 57 So.3d 807 (Ala.Crim.App.2009), the appellant was convicted of murder made capital because it was committed during the course of a kidnapping in the first degree as well as first-degree kidnapping involving the same victim. This Court held that “ ‘[a] defendant cannot be convicted of both a capital offense and a lesser offense that is included in the capital charge.’ ” Lewis v. State, 57 So.3d at 819, quoting Adams v. State, 955 So.2d 1037, 1098-99 (Ala.Crim.App.2003). Furthermore, this Court held:
“““While the appellant was properly charged with the two capital offenses, see Borden[ v. State, 711 So.2d 498, 503-04, n. 3 (Ala.Crim.App.1997) ], and both offenses were properly submitted to the jury, the prohibition against double jeopardy was violated when the appellant was convicted of the capital offense of *278 murder during the course of a kidnapping under Count I of the indictment and also was convicted of the lesser-included offense of intentional murder under Count II of the indictment, because the “same murder was an element of the capital offense and the intentional murder conviction.” Borden, 711 So.2d at 503. See also Coral v. State, 628 So.2d 954, 958 (Ala.Cr.App.1992), aff'd, 628 So.2d 1004 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994)(holding that the defendant’s conviction of the lesser-included offense of intentional murder under a count alleging the capital offense of murder-robbery and his conviction of the capital offense of murder-burglary violated the principles of double jeopardy where the same murder was an element of both convictions).’ ” ’ ”
57 So.3d at 819, quoting Mangione v. State, 740 So.2d 444, 449 (Ala.Crim.App.1998).
In the present case, Thomas was indicted for the first-degree robbery of both Charles Kelley and Patricia Bargin-ere. (C. 46, 48.) Two of Thomas’s capital-murder indictments charged him with intentionally murdering Kelley and Bargin-ere during the course of the same robberies. (C. 49, 50.) Like the appellant in Lewis, Thomas was convicted of lesser offenses—in this case, two counts of first-degree robbery—that were also elements of his capital-murder convictions. Accordingly, Thomas’s convictions for first-degree robbery violate the prohibition against double jeopardy and must therefore be vacated.
For the foregoing reasons, Thomas’s capital-murder convictions as well as his conviction for attempted murder are affirmed. However, this case is due to be remanded with instructions that the trial court set aside Thomas’s convictions for first-degree robbery. The trial court shall take all necessary action to see that the circuit clerk makes due return to this court at the earliest possible time and within 42 days after the release of this opinion.
AFFIRMED AS TO CAPITAL-MURDER CONVICTIONS AND ATTEMPTED-MURDER CONVICTION; REMANDED WITH INSTRUCTIONS AS TO ROBBERY CONVICTIONS. 
WINDOM, P.J., and WELCH, KELLUM, and JOINER, JJ., concur.

. The record on appeal contains two sets of transcripts that are separately numbered. The first set, denoted "Rl,” contains 538 pages of transcripts from Thomas’s youthful-offender application hearing, arraignment, scheduling conference, an ex parte hearing, pretrial motions, and an Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), hearing. The first 100 pages of that set are double numbered with pages 1048-1147 of the Clerk’s record. The second set, denoted "R2,” contains various other pretrial hearings, including the hearing regarding Kathy Richert’s testimony, as well as the trial and the sentencing proceedings.

. The record reveals that the Alabama Bureau of Investigation conducted an investigation regarding the recordings and concluded that there was no misconduct on the part of the sheriff’s department.